## COUNTY OF WASHINGTON, AUGUST TERM, 1859, AT SOUTH KINGSTOWN.

PRESENT:

Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, } Justices.
Hon. ALFRED BOSWORTH, }

---

## Joseph Crandall *v.* William James & others.

Trespass is the proper form of action to be brought against the trustees of a school district, by one, against whom they have illegally assessed and ordered to be collected, a school tax.

Upon the trial of such an action, the decision of the school commissioner and a justice of the supreme court, upon appeal, under ch. 68, sects. 1 and 2, that a tax has been illegally assessed, is conclusive, both in law and fact, upon the parties to the appeal, as to that question; and this construction of the statute does not bring it into conflict with sect. 15, art. 1, of the constitution, which declares, that "the right of trial by jury shall remain inviolate."

Trespass against the defendants as trustees of school district, No. 2, in the town of Exeter, for unlawfully assessing a tax upon the plaintiff's property within said district, and issuing to the district collector a warrant therefore, upon which he took and sold the plaintiff's cow.

At the trial of the case, under the general issue at the May term, 1859, of the court of common pleas for the county of

Washington, before Mr. Justice Shearman, with a jury — the plaintiff offered in support of the action, the statement of facts and decision of the commissioner of public schools — confirmed by the chief justice of the supreme court, in an appeal of the plaintiff, to the commissioner, from the action of the defendant trustees in the matter of assessing a tax upon the plaintiff's property within said district, by which it appeared and was decided, that said tax was illegally assessed. The defendants objected that the plaintiff's remedy, if any, was in case and not trespass, and offered evidence to prove that the statement of facts laid by the commissioner before the chief justice for his decision was erroneous, and the decision based thereon, wrong. The court, however, overruled the objection, and excluded the evidence offered; holding, as to the latter, that the decision upon the appeal to the commissioner was conclusive of the illegality of the assessment; whereupon a verdict having been rendered for the plaintiff, the defendants excepted to the above rulings as erroneous in matter of law, and brought their exceptions to this court for decision.

*W. Updike and Dixon* for the defendants.

1st. The action should have been case and not trespass; the injury to the plaintiff being consequential only upon the act of the defendants.

2d. By ch. 68, sects. 1 and 2 of the Revised Statutes, it is the decision of a judge of the supreme court, upon the statement of facts of the commissioner which is conclusive, and not the statement of the commissioner, which was what we offered to impeach by testimony.

3d. So construed, the above sections are valid; but if the statement of facts of the commissioner was designed to be made conclusive, then the sections are unconstitutional and void, inasmuch as they are in conflict with the right of trial by jury.

*E. R. Potter* for the plaintiff.

1st. The decision of the school commissioner, under chap. 68, § 1, of the Revised Statutes, is final, unless the parties request him to lay the case before one of the judges. The power

to *decide* the case implies a final decision, unless some mode of appeal is given by law.

2d. The claim of the defendants, to be allowed to show that the commissioner made a mistake *as to the evidence on which he gave his decision*, is inadmissible. If a right is admitted to question the decision of any legal tribunal on that ground, there would be no end to litigation.

3d. The law giving the commissioner the power to decide such cases is not unconstitutional, although it provides no trial by jury. The provision in the constitution of the United States has no reference whatever to cases of state legislation. By the provision of the Rhode Island constitution, no person is to be deprived of life, liberty, or property, " except by the judgment of his peers, or *the law of the land.*" (Art. 1, § 10, Rev. Sts. p. 19.)

4th. The phrase, *law of the land,* (lex terræ,) has a settled meaning. It was adopted into our constitution from *Magna Charta.* In that it was intended to designate the *known* and *common* law and usages of the people, in opposition to the civil law, which was attempted to be introduced, and to other codes of law. It meant the law of England. 1 Black. Com. 67, and Chitty's note ; Hargrave's Coke, p. 11. The phrase is copied into our constitution from our ancient Bill of Rights. The Rhode Island Code of 1647 provided, that no person should be deprived of his lands or liberties, " but by the *lawful judgment* of his peers, or by *some known law*, and according to the letter of it."

We may therefore assume, that in our legislation, the phrase has always been used as intending that every case should be judged by *known and general* laws, in opposition to special legislation, and perhaps also, in opposition to an equity system, against which there was *anciently* a strong prejudice in this state. See also 1 Kent Com., 8th ed. 612, top, and notes ; 4 Wheaton, 580. Even if this is not the meaning of the phrase, still it might be contended that being adopted from the old common-law times, it could only be construed to extend to cases, and classes of cases, known to the ancient common law ; and the school law provides for an entirely new class of cases. The case of flowage laws and railroad charters may be of

doubtful application here, because there the property is taken under *pretence* of the right of eminent domain.

5th. Even if the defendants had a right to trial by jury, by submitting to the jurisdiction without protest, they are concluded.

6th. As to the action. The taking the property was a trespass. The plaintiff had no remedy against the collector, because his warrant was, upon its face, regular, and was his justification. His only remedy is against the trustees, or assessors. They had jurisdiction of the subject matter; they had the right to lay the tax; but they did not comply with the forms of law. It is similar to the case of an inferior court exceeding its jurisdiction. It is the case of a magistrate issuing a void warrant; and the action must be trespass. 1 Chitty's Pleadings, 213, and cases there cited; *Withington* v. *Eveleth*, 7 Pick. 106. All persons who direct or order the commission of a trespass are principals. See instances and cases. 1 Chitty's Pleadings, 91.

7th. Even if the action is wrong, it is a defect apparent upon the face of the declaration, and should have been demurred to, or pleaded in abatement; and after pleading to the merits and a verdict, and after the costs of the suit are incurred, the plaintiff ought not to be nonsuited. 1 Chitty's Pleadings, 226, 488. And see 5 Mass. 558; 7 Mass. 237, 547; 13 Mass. 282; 16 Mass. 213; 1 Pick. 109, 482.

AMES, C. J. The first exception taken in this case, which supposes that the court below erred, in holding the action of trespass to be appropriate to it, cannot be maintained. The law, for the sake of the remedy, regards those who under color of office do, or order to be done, that which their authority does not warrant, as mere wrongdoers; and if the act be forcible, such as the arrest of a person, or the taking and carrying away of his property, as co-trespassers; in which relation all that take part in the forcible act, either as advisers or actors, are principals. Upon the supposition, therefore, that the defendants illegally assessed the school tax, which under their warrant was levied upon the property of the plaintiff, trespass, and not case, is the proper form of action for his redress.

*Agry* v. *Young*, 11 Mass. 220; *Freeman* v. *Kennedy*, 15 Pick. 44.

The remaining exception, that the court below erred in holding the decision of the commissioner and judge to be conclusive that the assessment was void, is equally untenable. The decision of the commissioner is conclusive from the very nature and purpose of his jurisdiction. It was designed, that as visitor under the public school system, he should summarily, cheaply and finally settle disputes arising in the great academic body created by the state, as the visitors of similar institutions, both in England and in this country, are accustomed to do. At the request of the defendants his judgment, embodying a statement of the facts, was laid before a justice of the supreme court for his decision; and the statute especially declares, that his decision shall be final. For all the purposes of such an enactment, it would be idle to make the decision of the justice conclusive, unless the statement of facts, deduced by the commissioner from the evidence before him, were also conclusive.

Nor is this construction of the statute, as contended, liable to the objection that it creates a conflict between the statute and sect. 5, art. 1, of the constitution, which declares, that "the right of trial by jury shall remain inviolate." The summary jurisdiction of visitors of academic bodies, nay, summary modes of passing upon the acts of officials engaged in the assessment and collection of taxes, were, at the adoption of the constitution, as well known in this state and in all other countries of the common law, as the equity, admiralty, and probate jurisdictions; and are as little liable as those, to the objection that they infringe the right of trial by jury. All these special jurisdictions have for ages, each in its appropriate sphere and in its distinctive method, administered justice side by side with the common-law courts; and in so doing, have never been supposed to encroach upon the rights of trial appropriate to common law cases, as these rights have been understood and interpreted. The result is, that the court below correctly held the defendants to be bound by the proceedings before the commissioner and judge, to which they and the plaintiff were parties; and that if after those proceedings they chose to go on and col-

lect a tax thus decided to be unlawful, they were liable as trespassers, with the right only to have the jury assess the plaintiff's damages. Both the exceptions brought before us by the defendants must therefore be overruled, and the court of common pleas ordered to render judgment for the plaintiff upon the verdict.