*Decision of a Judge of the Supreme Court, on an appeal to the School Commissioner.*

## APPEAL OF JOHN T. COTTRELL & others.

An appeal lies to the Commissioner of Public Schools from the location of a school-house by a school committee, and the commissioner may confirm or reverse the same, or make a new location.

Until his decision is confirmed by a judge of the Supreme Court, the commissioner may rehear the case. After such confirmation it is final in that case; and another location can only be made on entirely new proceedings.

On a hearing before the judge, the judge will decide only points of law, all matters of fact being stated by the commissioner.

POTTER, J. In this case the school committee of South Kingstown passed a vote fixing the location of the school-house in District No. 19, in that town, and on the 13th of November, 1872, John T. Cottrell and others appealed to the Commissioner of Public Schools, who, after a hearing, reversed the decision of the committee, and on the 24th of November, fixed the location on the Smith lot, so called, and subsequently on a request made by a district meeting, reviewed his decision and fixed the location upon the Pond lot. March 6, A. D. 1873, George T. Armstrong made a request to the commissioner that this decision should, as provided by the statute, be laid before one of the judges of the Supreme Court for his decision. H. T. Braman, Esq., attorney for Mr. Armstrong, makes this objection to the decision of the commissioner in the case, that it is not a case where the law gives any right of appeal; and that therefore the decision of the school committee was final and conclusive; and

for this point he relies on the case of *John H. Gardiner*, A. D. 1858, reported in 4 R. I. 602.

The provision of the original act of 1847 was, that "any person conceiving himself aggrieved," &c., might appeal. In 1857, Rev. Stat. chap. 68, § 1, it was provided as follows: "Any person aggrieved in consequence of any decision or doings of any school committee, district meeting, trustees, or in any other matter arising under this title, may appeal to the commissioner of public schools, who is hereby authorized and required to examine and decide the same without cost to the parties." In 1862, this was amended by chap. 412 of the Statutes, so as to read, "Any person may appeal," &c. And by the new Digest, which took effect on the 2d day of December, 1872, the provision of the act of 1857 is restored. Gen. St. chap. 55, § 1.

The appeal was taken, and the first decision made while the act of 1862 was in force, but I do not consider the difference in the language of the acts material to the case.

The language in 1849 is, " Any person conceiving himself aggrieved ; " in 1857 and 1872, " Any person aggrieved ; " and in 1862, " Any person may appeal," &c.

It was always held that " no appeal would be entertained unless made by the party aggrieved," and was so stated in the notes to the first edition of the school laws published by our first commissioner, Hon. Henry Barnard, and which notes were several times reprinted with the laws by the express authority of the legislature.

The grounds of the argument, against the right of appeal in this case, could not of course be more ably stated than they are in the decision to which the counsel refers us.

And they are, 1st. That a grievance implies a wrong growing out of some infraction of law, — a litigated question of right: the present case involves no question of right, and therefore the appellant is not a party aggrieved ; 2d. That the discretion is with the school committee : they have the power to decide it, and no wrong is done to any one, and no one has a right to complain or correct them ; 3d. That a contrary construction would throw every discretionary power into the hands of the commissioner and the Supreme Court, which latter might be utterly unfit to exercise it.

1st. Is the appellant a party aggrieved? He is 'a property holder in the district. The owners of that property have or may have children entitled to the privileges of the school. The distance of the location from his dwelling may seriously affect not only the convenience of sending to school, but the value of his property hereafter. If the money was a gift from some one to found a school, he might dictate the site and the conditions of his bounty, and no one could legally complain.

Here the whole money, as well what comes from state and town treasuries to pay the teacher, as this money to build the house, is derived from taxation, of which the appellant, it is presumed, pays his fair proportion. Some hundreds of years ago, perhaps, a deprivation of school privileges might not be considered a grievance; hardly so now; the appellant pays his proportion of the whole expenditure, and has a very material interest in the proper application of it.

2d. Does the fact that the school committee exercise a discretion in the choice of a site, prevent an appeal?

To apply such a doctrine to the school law would almost nullify the provision for appeal. There is hardly an exercise of power by the school committee or trustees which does not imply the exercise of discretion. The mere giving an order for payment of wages may perhaps be an exception; but the examining, and in some towns employing teachers, annulling of certificates, forming and changing school districts, supervision of taxes and building of houses, and the general regulation of the schools, all imply discretion. So with trustees; and so in many cases with the powers vested in school districts. If because they have the power to decide in the first place, and because they exercise a discretion in doing it, there can be no appeal, there would be hardly a case left for the exercise of such a right; and yet the language of the provision is very broad, and it would be difficult without a great deal of verbiage to make it more comprehensive.

If there was any doubt as to the meaning of the law, there is another principle of decision, which might be resorted to for aid. Where a law admits of different constructions, it is well settled that the usage under it and the practical construction of it for a series of years, is entitled to great weight, and sometimes may be decisive.

In the present case the practice was uniform. The two first commissioners under the law were constantly engaged in examining appeals of this very sort, sometimes confirming and sometimes altering, or wholly reversing, decisions of committees as to sites of school-houses. The redistricting which the law rendered necessary in most of the towns led to frequent dissension, and the practice was continued under their successors and does not seem to have ever been questioned until 1858.

It would no doubt make the office of commissioner easier and more pleasant, to take away this power. The decision of such cases leads frequently to enmities, or charges of being subject to improper influence. School committees, however honest, may be subject to local influences; and the very knowledge that their determination was likely to be reviewed by a disinterested person might, in many cases, prevent an improper decision, and a commissioner would seldom reverse a decision of a committee unless he was satisfied that the public good or justice to individuals required it. And for the purpose of securing uniformity in the administration of the law, this provision is very important.

3d. The third objection is that the allowance of appeals would refer everything to the discretion of the commissioner and judge, the latter probably not much acquainted with the subject, and unfitted for the exercise of this power.

It was deemed essential to the success of a comparatively new system to prevent litigation if possible. A quarrel or a lawsuit in a school district is generally not long confined to the original parties. It spreads among all the families, it goes into the selection of teachers, and injures the discipline of the schools; and if the difficulty once takes the shape of a lawsuit, and the parties have expended money as well as temper upon it, it is still more difficult to settle.

Hence the provision for a cheap and speedy decision avoiding the delay and expense of a lawsuit, and as the commissioner would probably very often not be a lawyer, it was provided that he might resort to a judge for an opinion upon points of law.

The practical construction of the law from the beginning has been that the judge has nothing to do with deciding the facts in the case. See School Law, edition of 1857. Remarks, p. 55, and see also decision of Chief Justice Ames, in case of *Emor*

Appeal of Cottrell.

*Smith*, 4 R. I. 590, 592, 594. The judge would not reverse the decision of a commissioner unless there appeared to be a legal objection to its validity.

Being therefore of opinion that the commissioner had jurisdiction on appeal, I see no reason for reversing his decision; but as until confirmed the commissioner might rehear if he deems it expedient, and after confirmation the decision would be final, and could not be reheard by him, and the location could not be changed without beginning proceedings again before the committee, I postpone a formal confirmation.

Being informed by the commissioner that there is no application for a rehearing, and that he sees no reason for revising his last decision, I hereby confirm the same.