JOSEPH E. McKEON *et al. vs.* WARWICK SCHOOL COMMITTEE.

AUGUST 9, 1950.

*Decision of One of the Justices of Supreme Court on Appeal Heard and Decided by Director of Education.*

FLYNN, C. J. This appeal from the "decisions and doings" of the school committee of the city of Warwick was filed with the director of education for the state of Rhode Island by certain teachers of that city in accordance with general laws 1938, chapter 199, as amended. Statements of fact and briefs were presented by the respective parties and after consideration of the arguments and law the director denied and dismissed the appeal. Thereupon at the request of appellants the director's findings and decision were referred to a justice of the supreme court for a final decision in accordance with the provisions of the above-mentioned statute.

It appears from the record that the appellants are teachers in the public high schools of the city of Warwick; that they have been teaching in that city under three or more successive annual contracts like the one in question, thereby attaining the status of teachers "in continuing service" under public laws 1946, chap. 1775, sec. 3; and that each of them has again signed a similar contract in the form

submitted by the respondent school committee which governs their services for the year 1949 to 1950.

That form of appointment, received by each appellant on or before April 20, 1949, reads as follows:

"At a meeting of the Warwick School Committee held on April 12th, you were elected to teach in the public schools of Warwick for the school year beginning September 7, 1949, at a salary at the rate of $............ annually, to be paid in installments as provided in the rules and regulations of the School Committee.

Your engagement as a teacher in Warwick is based upon your acceptance of the following named conditions:

1.   You shall be subject to assignment and transfer by the School Committee or its executive officer.

2.   You shall perform all work in a satisfactory manner, including such extra-curricular activities as may be assigned.

3.   If the Professional Improvement Requirements of the by-laws, Article III, Section 11, are not met by September 1949, your salary for the next school year will continue as at present.

4.   You shall return the acceptance of your appointment to the Clerk of the School Committee within ten days of the date of its issuance, as otherwise it will be regarded as a resignation.

Warren A. Sherman
Clerk of the School Committee

--------------------------------------------------------------------------------

Mr. Warren A. Sherman
Superintendent of Schools
Apponaug, Rhode Island

I hereby accept the appointment as a teacher in the public schools of Warwick at a salary at the rate of $...... ... annually and subject to the rules and regulations of the School Committee, for the school year beginning September 7, 1949.

Acceptance received

Cut on dotted line and return to School Department, Apponaug, Rhode Island"

Appellants allege that they have endeavored to meet with the school committee and have urged that paragraph numbered 2 of the above appointment or contract be eliminated or at least clarified in accordance with a schedule which is attached to the prayer of their appeal. According to such schedule certain of the "extra-curricular" activities therein defined would be mandatory on the teachers, others would be performed only upon a voluntary basis, and still other activities apparently would be mandatory but command extra compensation as therein set forth. Without such clarification they allege that the contract is vague and lacking in mutuality.

As a result of the committee's refusal to accept either of these alternative proposals the appellants specifically appealed to the director of education and petitioned that he take the following steps "to bring the Warwick School Committee into compliance with the Teacher's Tenure Law:

1. Direct the Warwick School Committee to eliminate or make certain Clause Two, so that in all present and future contracts the duties of teachers with respect to extra-curricular activities will be spelled out.

2. Direct said Committee to advise all teachers who have accepted contracts containing Clause Two that it is being eliminated or clarified.

3. If Clause Two appears in the rules, regulations, or by-laws of the Warwick School Committee, direct said Committee to amend said rules, regulations or by-laws so that they will conform to the statute by the elimination or clarification of Clause Two.

4. Advise said Committee that, if it determines that a clause concerning extra-curricular activities must be inserted in the contract, it should submit the new clause to you for your approval.

5. Suggest to said Committee that as a matter of good administrative procedure it meet with the duly authorized representatives of its teachers for assistance in solving the problem of extra-curricular assignments."

The respondent school committee through its clerk, namely, the superintendent of schools, filed a statement and brief

on behalf of the position taken by the committee. Attorneys for appellants later were permitted by the director to provide any additional facts they might desire and also to file a brief in their behalf. After consideration thereof and following a study of the pertinent law as construed by the attorney general, the director rendered a decision denying and dismissing the appeal on the ground that he found no violation of the law by the committee; and that without such a violation appellants were not "persons aggrieved" within contemplation of G. L. 1938, chap. 199, §2, which reads as follows: "Any person aggrieved by any decision or doings of any school committee, or in any other matter arising under this title, may appeal to the director of education, who, after notice to the party interested of the time and place of hearing, shall examine and decide the same without cost to the parties: *Provided,* that nothing contained in this section shall be so construed as to deprive such aggrieved party of any legal remedy."

In my opinion the decision of the director of education on the record herein presented is correct. The meaning to be given the words "any person aggrieved" in determining who has the right to appeal under the above-mentioned statute appears to be well established. As early as 1858, in construing a provision substantially the same as the one appearing in our present statute, Chief Justice Ames stated: "A *grievance* supposes a *wrong,* growing out of some infraction of law, of which the aggrieved party has the right to complain * * *." *Appeal of Gardiner,* 4 R. I. 602. As buttressing that conclusion he therein called attention to the later provision enabling or requiring the director to lay a statement of facts of the case appealed from before one of the judges of the supreme court for final decision. In connection with that provision he stated: "This implies some litigated question of *right,* to be determined under the school-law or general law, or, as the case may be, under both * * *."

Further in that case, in overruling a decision by the school

commissioner wherein the latter on a similar appeal had reversed the action taken by a school committee in the exercise of its lawful discretion, the same justice stated: "I can see no wrong done to any one by their decision, however unwise it may be, and no question for the commissioner, upon appeal, to determine." In other words, it appears that unless there has been an infraction of law or some action by the committee which exceeds the powers granted to them under the school or general law there is no litigated question of right to form the basis of an appeal under the statute.

The same view of the law was later adopted substantially in *Appeal of Cottrell,* 10 R. I. 615. There, at page 616, after expressly approving the construction of the statute and the reasoning appearing in the *Gardiner* case, it is stated that "a grievance implies a wrong growing out of some infraction of law,— a litigated question of right." Such construction of what constitutes a grievance under this statute has been consistently followed to the present time, so far as I can find, and the appellants have cited no case to the contrary. Nor does the instant record show any substantial and peculiar circumstance to warrant an exception thereto or amendment thereof.

Applying that law, therefore, to the facts herein I am of the opinion that the form of appointment or contract submitted to the appellants to be signed does not of itself violate any express or implied provision of the teacher's tenure law, P. L. 1946, chap. 1775. Nor can I find from anything here presented wherein such contract violates any provision of the school or general law. Among other powers and duties the school committee under G. L. 1938, chap. 178, is vested in substance with the right and responsibility to provide for the entire care, control and management of all public school interests. This implicitly authorizes them to make such reasonable rules and regulations as are deemed necessary to effectuate the purpose of the statute and the performance by the committee of their obligations

under the law. The teacher's tenure law does not expressly or impliedly eliminate or change these rights and responsibilities. Unless the committee exceeds its powers thereunder or violates some other provision of the law, the teachers are not aggrieved under the statute in question.

It would appear that appellants' real complaint is not based upon a wrong growing out of an infraction of law but rather stems from a difference between them and the school committee as to certain matters in connection with the policy to be followed as to education and the teachers in continuing service. Indeed they seem to recognize this fact in their appeal under part II entitled "Posititon Of The Teachers." While they first suggest therein that the question for determination is a legal one, nevertheless immediately thereafter they expressly state: "We sincerely regret that we have been compelled to resort to this procedure to solve a problem which is fundamentally not a legal question at all, but a problem of human relations * * *."

In any event appellants' complaint, so far as it purports to raise an alleged question of law, is based primarily on their own interpretation of paragraph numbered 2 of the contract and upon a further assumption of possible violations of law by the school committee in the future. It is first assumed that the respondent committee and the superintendent of schools will make rules and regulations which are unlawful and that thereunder appellants will be required to perform extra-curricular work which is arbitrary, discriminatory and not at all related to the proper scope of education and duties of teachers in continuing service. On that premise they then argue that the later provision of the contract by which a failure to sign may be construed as a resignation constitutes in effect a dismissal without just cause or hearing, contrary to the teacher's tenure law.

The difficulty with appellants' argument is that it presumes a violation of law by the school committee which on the record and finding in this case has not happened and which according to the statement and brief for the com-

mittee is not proposed or intended to take place in the future. It is not disputed by the respondent committee that teachers in continuing service have certain protection from arbitrary discharge without notice and hearing as set forth in the teacher's tenure law. But that law does not purport to place any further restriction on the school committee in the making of rules and regulations which are deemed reasonably necessary to the performance of their obligations under other statutes. Unless and until appellants are required to perform extra-curricular activities under rules and regulations which violate the law or exceed the school committee's proper powers, any claim that appellants are aggrieved persons under the present statute is without legal foundation. On this record no such unreasonable rule or requirement by the school committee has been established and the director has made his finding to that effect. In the circumstances, therefore, it is my judgment that the objections of the appellants are without merit and the decision of the director of education should be affirmed.

All of the appellants' objections are overruled, the decision appealed from is affirmed, and the papers in the case are ordered sent back to the director of education.

Edmund W. Flynn
Chief Justice of the Supreme Court
*Coffey, Ward, Hoban & Reed,* for appellants.