296 A.2d 456.
CLAIRE JACOB *vs.* FRED BURKE *et al.*

NOVEMBER 6, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. These are cross-appeals from a Superior Court judgment, entered in consequence of litigation, the nature and travel of which are such as to necessitate a somewhat detailed recital.

The plaintiff, certified to teach in the public schools of this state, commenced her teaching career in North Kingstown, Rhode Island, where she taught for six consecutive years. Thereafter, she transferred to Hopkinton where she taught for three years until 1969 when she entered the South Kingstown school system. She was still teaching in the latter community on February 25, 1971, when she was given written notice by the South Kingstown school board that her contract would not be renewed.

However, notwithstanding more than ten years of continuous service as a teacher, plaintiff's status with the South Kingstown school board was that of a nontenured teacher.[1]

---

[1] Under G. L. 1956 (1969 Reenactment) §16-13-8:

"Any teacher in continuing service who voluntarily resigns, and transfers to another community in Rhode Island without interrupting his professional career, shall be considered to remain under tenure *unless such teacher is notified to the contrary, in writing, prior to March 1 of the second school year in which the teacher transfers.*" (emphasis ours)

It is not disputed that plaintiff was seasonably notified by the South Kingstown board that she would not have tenure.

Consequently, the South Kingstown school board, in its notice of nonrenewal gave no reason for its action.

However, by the enactment of P. L. 1970, ch. 222, sec. 1, now cited as G. L. 1956 (1969 Reenactment) §16-13-2, as amended, the General Assembly gave to nontenured teachers who were notified that their contract would not be renewed, the same right to demand a statement of cause for dismissal or nonrenewal of his contract by the school board, that it had long since provided for teachers with tenure. Moreover, §16-13-2, as amended, also provided, as it previously had for tenured teachers, a right to a hearing on said charges and, if aggrieved thereby, a right of appeal pursuant to the procedure set forth in §16-13-4.

Invoking the protection thus afforded by §16-13-2, as amended, plaintiff requested of and received from the South Kingstown board, a statement of the charges on the basis of which the board had voted not to renew her contract. She also had the required hearing by the board which, thereafter, voted not to change its original decision.

Consequently, as provided by §16-13-2, as amended, plaintiff appealed to the State Department of Education as authorized by §16-13-4.

However, at this juncture it becomes necessary to point out that the "state department of education" referred to in §16-13-4 no longer existed when plaintiff claimed her appeal on May 24, 1971. This is so because by the enactment of P. L. 1969, ch. 231, now G. L. 1956 (1969 Reenactment) §16-49-1, as amended, the General Assembly created a new table of organization with regard to education. Specifically, §16-49-1, as amended, establishes a "board of regents for education" and vests such board with all the powers, rights, duties and privileges theretofore possessed by, inter alia, the State Department of Education.

Moreover, chapter 49 of title 16 was originally enacted as P. L. 1969, ch. 231. Said ch. 231, sec. 11, expressly em-

powered the board of regents, once having organized, to adopt an order abolishing the then existent State Department of Education. The section further provides that such order, when adopted, would be filed with the Secretary of State and effective with such filing, the State Department of Education would stand abolished.

The record establishes that an order abolishing the State Department of Education was in fact adopted by the board of regents and filed with the Secretary of State on June 29, 1970, to be effective as of July 1 of that year.

As heretofore related, plaintiff claimed her appeal from the decision of the South Kingstown school board on May 24, 1971, almost 11 months after the State Department of Education referred to in §16-13-4 had been abolished.

However, for reasons hereinafter stated, the abolishment of the State Department of Education referred to in §16-13-4, did not work a denial of plaintiff's right of appeal. The 1969 reorganization act, specifically §16-49-7, authorizes the board of regents to appoint a commissioner of education who, said section provides, shall have the power to hear appeals from decisions of local school boards. Consequently, plaintiff's appeal from the decision of the South Kingstown school board was received and acted upon by the commissioner of education, appointed by the board of regents. The commissioner, however, after a hearing on said appeal, affirmed the decision of the local school board.

From the decision of the commissioner, plaintiff appealed to the Superior Court as provided by §16-13-4. She did so by filing in the Superior Court a complaint which sought, in addition to a review of the commissioner's decision, an ex parte restraining order against the commissioner and the local school board to the end that plaintiff be permitted to continue teaching until the matter had been finally litigated.

This complaint was filed in the Superior Court on Sep-

tember 1, 1971, and on that day, a Superior Court justice granted an ex parte restraining order as prayed by plaintiff. Pursuant to Super. R. Civ. P. 65, a hearing was set for September 9, 1971, on plaintiff's prayer for preliminary and permanent injunctive relief. On this latter date, defendants orally moved to dismiss plaintiff's complaint on the ground that she had failed to exhaust her administrative remedies.[2]

The record indicates that on September 9, 1971, a Superior Court justice did conduct a hearing on plaintiff's prayer for injunctive relief and on defendants' motion to dismiss. We say "indicates" because it would appear that no transcript of that hearing was compiled. Be. that as it may, all parties, in their oral arguments and briefs, refer to the September 9 hearing and, in such circumstance, we assume it to be a fact that a hearing was held.

At the conclusion of said hearing, the Superior Court justice reserved decision. Subsequently, specifically on October 18, 1971, a judgment was entered granting defendants' motion to dismiss but also granting plaintiff's prayer for preliminary injunction. From this judgment plaintiff and defendants appealed.

The plaintiff's appeal is predicated on her contention that the trial justice erred in granting defendants' motion. The defendants' appeal is predicated on the proposition that having dismissed plaintiff's complaint the trial justice lacked jurisdiction to grant injunctive relief.

## I

### The Plaintiff's Appeal

This court has long adhered to the doctrine that when the General Assembly provides a right of judicial review from the decision of an administrative agency, it is incumbent upon the party aggrieved to exhaust all remedies with-

---

[2]Subsequent to the hearing on September 9, 1971, but prior to October 7, 1971, the date on which the Superior Court justice rendered his decision, defendants filed a written motion to dismiss.

in such agency before judicial review may be invoked. *Hartunian* v. *Matteson,* 109 R. I. 509, 288 A.2d 485 (1972); *Warren Education Ass'n* v. *Lapan,* 103 R. I. 163, 235 A.2d 866 (1967); *Conley* v. *McCarthy,* 84 R. I. 141, 121 A.2d 875 (1956); *New England Tel. & Tel. Co.* v. *Kennelly,* 75 R. I. 422, 67 A.2d 705 (1949).

Consequently, whether there is merit to plaintiff's appeal turns on the question of whether she has failed to exhaust her administrative remedies. We conclude that her recourse to the Superior Court from the decision of the commissioner was premature. But the reasoning behind this conclusion is somewhat at variance with that of the Superior Court justice. Because it will prove helpful to the courts, as well as to litigants, in possible future litigation, we think it advisable to set forth in some detail the legislative history governing the instant plaintiff's status.

As heretofore recited, plaintiff claimed her appeal from the decision of the South Kingstown school board on the authority of §16-13-4. In his consideration of her appeal, however, the commissioner treated it as one taken pursuant to chapter 39 of title 16, sections 2, 3 and 4, the exact provisions of which are appended to this opinion for ready reference.

It suffices at this juncture to note that §16-39-2 provides for an appeal by *any person* aggrieved by a decision of a local school board to the commissioner of education.

Section 16-39-3 provides for further appeal to the board of education.

Section 16-39-4 in turn provides for judicial review in the Superior Court of the state board's decision, but expressly provides that such judicial review shall be had in accordance with chapter 35 of title 42, the short title of which is the Administrative Procedures Act.

In arguing their motion to dismiss, defendants contended that plaintiff's appeal from the decision of the commissioner should have been taken to the Board of Regents for Education, successor to the State Department of Education under the 1969 reorganization act. The Superior Court justice found such contention to be persuasive and based his decision thereon.

The plaintiffs, on the other hand, correctly points out that said 1969 reorganization act, specifically §16-49-15, expressly exempts decisions of the board of regents from judicial review under the provisions of the Administrative Procedures Act.

She further points out that she claimed her appeal to the commissioner under §16-13-4 and, we agree, her appeal was properly based on the last cited section rather than chapter 39 of title 16, sections 2, 3 and 4.

The right of appeal by any person aggrieved now provided in §16-39-2 first appeared in an enactment by the General Assembly in 1851. Public Laws 1851 at 823: "An Act to revise and amend the laws regulating Public Schools." See sec. 65.

It gave to all persons aggrieved by a decision of a school board the right of appeal to the commissioner together with a right of review of the commissioner's decision, on the latter's initiation or upon the request of either party to a single justice of the Supreme Court. This act remained virtually unchanged until 1946 when the Legislature carved out a special route of appeal for teachers dismissed for alleged cause. Public Laws 1946, ch. 1775, sec. 4. In turn this separate avenue of appeal for such teachers has remained unchanged until the present day, being §16-13-4. However, by establishing this separate route of appeal from decisions

dismissing teachers, the Legislature did not abolish a right of appeal to persons otherwise aggrieved.[3]

However, that the Superior Court justice reached his decision to dismiss on plaintiff's failure to exhaust the administrative remedies provided by §§16-39-2 and 3, rather than §16-13-4, is of no avail to plaintiff. We have gone to some length to point out that the appeal from the decision of a local school board by a tenured teacher dismissed for alleged cause, or a nontenured teacher whose contract is not renewed, is governed by §16-13-4 and not §§16-39-2 or 3, to the end that possible future litigants will follow the proper appeal procedure applicable in their cases. We deem this to be important because the right of an appeal to the Superior Court under the administrative procedures

---

[3]For examples of who might be aggrieved by the decision of a local school board, other than teachers dismissed for cause, the following cases are illustrative. *School Committee* v. *State Board of Education,* 103 R. I. 359, 237 A.2d 713 (1968) involves the appeal of school teachers from an action of a school committee denying them the right to be paid for a holiday. *Campbell* v. *School Committee,* 67 R. I. 276, 21 A.2d 727 (1941) involves an appeal of the incumbent superintendent from the local school board's decision not to renew his engagement. *Hasbrouck* v. *School Committee,* 46 R. I. 466, 128 A. 449 (1925) involves the appeal of certain residents of the Town of Bristol from the decision of that municipality's school committee in selecting a site for a school house. *Crandall* v. *James,* 6 R. I. 144 (1859) involves an appeal of a taxpayer from an illegal assessment of a tax imposed by trustees of the Exeter school district. *See also* *Demers* v. *Collins,* 98 R. I. 312, 201 A.2d 477 (1964); *McKeon* v. *Warwick School Committee,* 77 R. I. 421, 75 A.2d 313 (1950); *Appeal of Cottrell,* 10 R. I. 615 (1873) and *Appeal of Gardiner,* 4 R. I. 602 (1858).

Thus we think it readily apparent that G. L. 1956 (1969 Reenactment) §16-13-4 and not §16-39-2 was correctly invoked by the instant plaintiff.

Distinguish, however, *North Kingstown* v. *Robinson,* 99 R. I. 348, 207 A.2d 389 (1965). This involved an appeal under §16-39-2, taken by a teacher from a decision of the North Kingstown school board, revoking his contract. The appeal was taken in 1964, some 18 years after the enactment of P. L. 1946, ch. 1775, sec. 4.

However, §16-13-4 was not called to the attention of this court, hence overlooked. Insofar then as *North Kingstown* v. *Robinson, supra,* conflicts with our holding here, the earlier case will not hereafter be followed.

act formerly provided by §16-39-4, was repealed by the enactment of P. L. 1969, ch. 231, sec. 3, now G. L. 1956 (1969 Reenactment) §16-49-15. Thus while any person, other than a tenured teacher dismissed for cause, or a non-tenured teacher whose contract has not been renewed, aggrieved by the decision of a local school board, has a right of appeal to the commissioner of education under §16-39-2, preserved by P. L. 1969, ch. 231, sec. 3, now G. L. 1956 (1969 Reenactment) §16-49-7, and from said commissioner to the board of regents under §16-39-3, preserved by P. L. 1969, ch. 231, sec. 3, now G. L. 1956 (1969 Reenactment) §16-49-5 (9)(h),[4] he does not have a right of an appeal from a decision of the board of regents. Consequently, judicial review of such a decision would be by way of common-law certiorari in this court. *See Crandall* v. *James,* 6 R. I. 144 (1859).

The case is otherwise, however, for a tenured teacher dismissed for alleged cause or a nontenured teacher whose contract is not renewed. As heretofore emphasized, the appeal of such tenured or nontenured teachers from the decision of a local school board is by way of §16-13-4. Although the "department of education" referred to in that section was abolished in accordance with the provisions of the 1969 reorganization act, that act specifically provides for the administrative review previously vested in the department of education.

Specifically, whereas the former "department of education" consisted of a commissioner of education and a board of education, the reorganized department consists of a commissioner of education and a board of regents. However, the effect of the reorganization was not to eliminate admin-

---

[4]General Laws 1956 (1969 Reenactment) §16-39-3 provides for an appeal from the commissioner to the board of education which has been absorbed by the board of regents, pursuant to the provisions of P. L. 1969, ch. 231, sec. 3, now §16-49-5(8).

istrative review within the agency for teachers who have been dismissed for cause or whose contracts have not been renewed. Rather, the administrative review for such teachers is identical to that of any other person aggrieved. Having exhausted such administrative review, however, tenured teachers dismissed for cause, or nontenured teachers whose contracts are not renewed, unlike all other persons aggrieved by the decision of a local school board, have an express right to judicial review in the Superior Court.

But before such right may be invoked, those who have it must first exhaust their administrative remedies.

The plaintiff at bar acknowledges such to be the general rule but contends that it is not or should not be applicable to the circumstances of her case. This is so, she argues, because almost simultaneously with the abolition of the department of education on July 1, 1970, the board of regents adopted the following regulation:

> "Any party aggrieved by a final decision of the Commissioner of Education made pursuant to the provisions of General Laws, 1956 (1969 Reenactment) Section 16-49-7 may appeal to the Board of Regents who shall decide and determine said appeal. Additionally, said Board of Regents may in its discretion decide and determine such other matters as it shall deem appropriate. *For purposes of these rules the term 'aggrieved party' shall not include persons aggrieved by the decision of a school board, who shall have the right of appeal to the Director of Elementary and Secondary Education and the right of further appeal to the Superior Court, pursuant to the provisions of General Laws, 1956 (1969 Reenactment) Section 16-13-4.*"[5] (emphasis added)

[5]Section 16-49-7 creates the office of commissioner of education, who shall be appointed by the board of regents. However, pending the appointment of a commissioner the regents adopted an order on June 9, 1970, establishing the interim position of director of elementary and secondary education. It was adopted pursuant to the provisions of §16-49-8,

The objection to reading this rule of the regents in *pari materia* with §16-13-4, is that we find no legislative grant of authority for the regents to adopt such a rule. Certainly there is no such authority expressed, nor does it exist by implication. We are persuaded that this is so because the 1969 reorganization act was enacted pursuant to findings of a special commission created by the General Assembly to study the entire field of education (1965 Acts and Resolves, Resolution No. 36 at 1284). This commission ultimately filed with the General Assembly a summary of its work known as the Thibeault Commission Report on Education. This report, filed with the General Assembly June 1, 1968, is properly entitled: *Education in Rhode Island: A Plan for the Future*. Insofar as is here relevant the recommendations of that report were substantially mirrored in the legislation which was ultimately adopted, P. L. 1969, ch. 231.

Specifically commenting upon the role of the board of regents in deciding appeals from the decisions of the commissioner, the report stated in pertinent part:

> "It is commonplace across the nation to authorize the state board of education to act as a quasi-court in deciding on appeals made by parties who claim to be aggrieved by decisions of the Commissioner of Education. It is essential that this particular form of internal judicial review be available within the educational establishment itself for two reasons: 1) there is always the risk that an individual administrator will be dictatorial in his decisions, and 2) it should not be necessary for an aggrieved party to bring action in civil or criminal courts for redress of grievances."

which provides: "The board of regents shall establish, organize and supervise a department of education which shall perform such of the research and administrative functions and duties required of the regents by the provisions of this chapter as are assigned to it by the regents."

Parenthetically, it should be noted that the instant plaintiff's appeal was considered and rejected by the commissioner, who, having been appointed on November 12, 1970, assumed office on January 1, 1971.

"* * * we believe that the Board of Regents will have a far higher volume of legal questions to ask in the future because of the fact that we have recommended that it become, in effect, the chief law-making agency, for education in Rhode Island."

In further emphasis of the Thibeault Commission's conviction that there should be a review by the board of regents, their report went on to say:

"Consequently, we believe that the Regents as well as the professional staff of the department, should have legal counsel available more directly than in the past." *Education in Rhode Island: A Plan for the Future* (1968).

Summarizing, we conclude that the board of regents is not authorized to short-circuit an appeals system which, although admittedly lengthy, was established by the Legislature. If any abbreviation of the process is desired, it should be effected by the Legislature, and not by the board of regents or by this court. Consequently the Superior Court justice properly concluded that plaintiff's appeal from the commissioner to the Superior Court was premature.

Having decided that plaintiff has failed to exhaust her administrative remedies, and that she must pursue the merits of her case before the board of regents, we turn to defendants' appeal from the order of the trial justice granting plaintiff's prayer for injunctive relief. This appeal is predicated on the proposition that, having dismissed plaintiff's appeal from the commissioner, the Superior Court justice lacked jurisdiction to enter such an order. We disagree.

It is true that when a litigant has failed to exhaust his administrative remedies the trial justice, *may,* in his discretion, dismiss an entire complaint for lack of subject matter jurisdiction. *See Ricciotti* v. *Warwick School Committee,* 319 F.Supp. 1006 (D. R. I. 1970). This does not mean, however, that in every such case the entire action need be dismissed. As Professor Kent has said in discussing the na-

ture of injunctive relief available under Super. R. Civ. P. 65:

"The merger of law and equity achieved by these rules means that the action is in form the same as one in which damages only are sought. However, whether a party is entitled to an injunction must still be determined by the flexible processes developed by courts of chancery. The unitary civil action does afford the court the opportunity to dispose of a controversy by awarding appropriate relief, and no longer is an action subject to dismissal because the form of relief sought is unavailable, if other relief is warranted." 1 Kent, *R. I. Civ. Prac.* §65.1 at 474.

The complaint of the plaintiff at bar contained requests for both legal and equitable relief, and was brought as a civil action under the cited rule. Although on its face the trial justice's order dismissed the entire action, when read as a whole it is apparent that it dismissed only the claim for legal relief and exercised jurisdiction over the equitable prayer. We find this determination to be appropriate under the circumstances and clearly within the letter as well as the spirit of the rules.

Even so, defendants further argue that plaintiff would not suffer irreparable injury should the restraining order be terminated, and this being so, the restraining order constitutes an abuse of discretion.

They make this contention on their conclusion that should plaintiff eventually prevail on the merits, she would be entitled to reinstatement, tenure and back salary, citing §16-13-5. This, they urge, is an adequate remedy at law.

Section 16-13-5 provides for restoring emoluments to a teacher found to have been unlawfully suspended, and our independent research has failed to discover where the Legislature has made similar provision for a teacher unlawfully dismissed. Nevertheless it seems unlikely that a teacher whose dismissal for alleged cause is eventually determined

to have been unlawful, would not be entitled to have all lost emoluments restored.

But if so, we are not prepared to state dogmatically that in a given case, a teacher who has been dismissed, allegedly for cause and who is prosecuting an appeal under §16-13-4 is precluded from showing circumstances which, unique to her, would warrant injunctive relief pending final outcome of her appeal. *See Murray* v. *Kunzig,* 462 F.2d 871 (D.C. Cir. 1972); *Schwartz* v. *Covington,* 341 F.2d 537 (9th Cir. 1965); *Reeber* v. *Rossell,* 91 F.Supp. 108 (S.D.N.Y. 1950).

But such circumstances as might warrant interim injunctive relief will not be presumed. Rather, the burden is on the moving party to at least make out a prima facie case for such relief. *Studley Land Co.* v. *Myers,* 81 R. I. 426, 103 A.2d 924 (1954); *Fritz* v. *Presbrey,* 44 R. I. 207, 116 A. 419 (1922); *Blackstone Hall Co.* v. *R. I. Hospital Trust Co.,* 39 R. I. 69, 97 A. 484 (1916).

Applying this principle to defendants' appeal, we find that there is no record of the hearing which resulted in the Superior Court justice's grant of plaintiff's prayer for injunctive relief. Neither does the trial justice make findings of fact in his decision. Consequently, we can only conclude that plaintiff's prayer was arbitrarily granted, and as such is clear abuse of the Superior Court justice's discretion.

We have heretofore held that where the trier of fact fails to make those findings upon which his decision rests, we will neither search the record for supporting evidence nor will we decide for ourselves what is proper in the circumstances, with the possible exception of a case in which there is no evidentiary conflict and the record admits to no conclusion other than that the requisite findings

had been made. *Hooper* v. *Goldstein*, 104 R. I. 32, 241 A.2d 809 (1968).[6]

Here, there are neither findings of fact which would warrant the granting of the relief for which plaintiff prayed, nor a record from which this court could conclude that the necessary findings were implicit in the decision.

The plaintiff's appeal is denied and dismissed, the defendants' cross-appeal is sustained. The judgment appealed from is affirmed as it relates to the plaintiff's appeal, vacated as it relates to the defendants' cross-appeal, and the cause is remanded to the Superior Court for further proceedings.

## APPENDIX

"16-39-2. *Appeal of school committee actions to commissioner.*—Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved.

"16-39-3. *Appeal to state board.*—Any decision of the commissioner in such matters shall be subject to an appeal to and review by the board of education.

"16-39-4. *Judicial review.*—Judicial review may be obtained by any aggrieved party as provided in chapter 35 of title 42."

*Urso* and *Adamo, Natale L. Urso, John J. Adamo,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for School Committee.

---

[6]While *Hooper* v. *Goldstein,* 104 R. I. 32, 241 A.2d 809 (1968), came to this court by way of certiorari, our reference therein to the fact-finding tribunal was intended to and does embrace appellate review of all matters where a determination of the lower tribunal's holding rests for validity on findings of fact.