**SCHOOL COMMITTEE OF the CITY OF PROVIDENCE**

v.

**BOARD OF REGENTS FOR EDUCATION.**[1]

No. 78–275–M.P.

Supreme Court of Rhode Island.

May 21, 1981.

1. The petition for certiorari filed with this court names the School Committee of the City of Providence as petitioner and the Board of Regents for Education as respondent. The proper caption, however, is the one employed in the original appeal to the Commissioner of Education: *Carl S. Lauro v. School Committee of the City of Providence.*

Vincent J. Piccirilli, Providence, for petitioner.

Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Providence, for Carl S. Lauro.

## OPINION

BEVILACQUA, Chief Justice.

This is a petition for a writ of certiorari by the defendant Providence School Committee (committee) seeking a review of a decision of the Board of Regents for Education affirming a finding of the Commissioner of Education that the plaintiff, Carl S. Lauro (Lauro), was to be considered a long-term substitute teacher and therefore was improperly terminated by the committee.

The facts of this case are as follows. Lauro was employed intermittently as a per diem substitute teacher taking the place of various teachers in several schools in the Providence school system from September 7, 1976, until November 3, 1976. From November 4, 1976, through April 29, 1977, Lauro was employed for 105 consecutive days, substituting for a teacher on sick leave and bringing his total days for the year to 134. On Friday, April 29, 1977, Lauro was notified by a telephone call from the office of the assistant superintendent for personnel that he was not to report to work on Monday, May 2, 1977. At this time, Lauro was one day shy of the 135-day total needed for "regularly employed" status under G.L. 1956 (1969 Reenactment) § 16–16–1(2) as amended by P.L. 1976, ch. 236, § 2, and subsequent to this suit, by P.L. 1979, ch. 211, § 1, and for membership as a long-term substitute in the collective bargaining unit under the agreement between

the committee and the Providence Teachers' Union (union).[2] Thereafter, Lauro was not employed by the Providence School Department in any capacity after April 29, 1977, to the end of the 1976–77 school year.

During the 134 days Lauro was a per diem substitute teacher, he received $28 per day. He received no benefits pursuant to the terms and conditions of the collective-bargaining agreement. With the support of the union, Lauro complained to the committee that he had been unfairly terminated and should have been accorded the rights and privileges of a long-term substitute.[3] The committee disagreed with this argument, relying on budgetary concerns and its belief that no statute or provision of the collective-bargaining agreement had been violated. After a hearing conducted by the Associate Commissioner of Education (associate commissioner), the Commissioner of Education (commissioner) found in favor of Lauro. The committee appealed to the Board of Regents for Education (board) in accordance with G.L. 1956 (1969 Reenactment) § 16–39–3 and the board affirmed the commissioner's decision. The committee then filed this petition for a writ of certiorari which we granted to consider several assignments of error.

The issues presented by this petition are (1) whether the commissioner erred by allowing the union to represent Lauro at the original hearing, (2) whether the commissioner had jurisdiction to hear Lauro's appeal, and (3) whether the committee's failure to recall Lauro and to afford him the salary and rights of a "regularly employed"

teacher violates the laws of this state or Lauro's interest in becoming a member of the collective-bargaining unit.

I

General Laws 1956 (1968 Reenactment)[4] § 28–9.3–3 states that the "labor organization selected by the certified public school teachers * * * shall be recognized * * * as the sole * * * bargaining agent for all of the said public school teachers * * *." In *Belanger v. Matteson*, 115 R.I. 332, 346 A.2d 124 (1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976), we held that a teachers' union must represent all personnel within the bargaining unit whether members or not. However, under § 16–16–1(2) of the General Laws, per diem substitutes are not "regularly employed" teachers. Moreover, per diem substitutes are expressly excluded from the bargaining unit under the 1976–79 collective-bargaining agreement.

At the same time, we are not unmindful of Lauro's threshold argument. Lauro contends that, but for improper termination by the committee, he would belong to the collective-bargaining unit and would have fulfilled the statutory and contractual prerequisites for becoming a "regularly employed" teacher.

The committee argues that the Providence Teachers' Union, through its proxy, Joseph Grande, should not have been allowed to represent Lauro at the initial hearing before the Associate Commissioner of

2. In *Berthiaume v. School Committee of Woonsocket*, R.I., 397 A.2d 889 (1979), we used the term "regularly employed" as defined in G.L. 1956 (1969 Reenactment) § 16–16–1(2) as amended by P.L. 1976, ch. 236, § 2, and subsequent to this suit, by P.L. 1979, ch. 211, § 1, to distinguish between substitute teachers who are included under the protection of the statutory-salary schedule and those who are not covered by the schedule. *See* G.L. 1956 (1969 Reenactment) § 16–7–29. Under the collective-bargaining agreement, the former are referred to as long-term substitute teachers and the latter fall into the category of per diem. Generally, a substitute teacher must serve at least three-quarters of the number of days in the school year to qualify as long term and thus

"regularly employed" under § 16–16–1(2). The agreement between the committee and the union provides an additional means for a per diem substitute to achieve long-term status. If a physician certifies that an absent teacher's illness will continue for the remainder of a semester, the substituting per diem is eligible to become a long-term substitute.

3. Under the collective-bargaining agreement, a per diem substitute who becomes long term during the year, will receive the appropriate step on the salary schedule retroactively.

4. Current version appearing in 1979 Reenactment.

Education.[5] The committee correctly asserts that Lauro was not a member of the union.[6] According to the committee, the statutory scheme created to govern appeals to the Commissioner of Education precludes union representation under these circumstances.[7]

■■ General Laws 1956 (1969 Reenactment) §§ 16–39–1 through 16–39–7 and the rules enacted pursuant to these sections do not expressly or impliedly limit the right of a party to choose its own legal exponent when bringing a complaint. The committee contends, however, that because the statutes and rules make no reference to the specific issue of union representation, the union must not act as advocate in a title 16, chapter 39 administrative hearing. This argument is unpersuasive, and we reject it. Because this is the only basis upon which the committee objects to Mr. Grande's representation, we decline to rule whether such representation of a person outside the bargaining unit would always be appropriate. In a certiorari proceeding, the court's review is confined to questions raised by the petitioner (the committee). *Lynch v. King*, R.I., 391 A.2d 117, 123 (1978). It follows that this court, when expedient, may limit its review of these questions to the specific objections raised in the petition itself. *See Providence Journal Co. v. Mason*, 116 R.I. 614, 620, 359 A.2d 682, 685 (1976).

Therefore, in respect to the instant case, we shall not render the original appeal void

because of the union's involvement. The union's advocacy, lawful or otherwise, should not prejudice Lauro's rights at this stage of the litigation. Furthermore, we find that Lauro acted in good faith when he took his appeal to the associate commissioner. *Cf. Lorraine Manufacturing Co. v. Wilson*, 73 R.I. 313, 318, 55 A.2d 861, 863–64 (1947) (innocent appellant not penalized for unlawful representation of claim by non-lawyer).

II

■■ The next issue raises the question of whether the Commissioner of Education had jurisdiction to entertain this appeal. Lauro asserts that the commissioner had jurisdiction under § 16–39–2.[8] Under this section several requirements must be met. First, the party appealing to the commissioner must be "aggrieved" within the meaning of the statute. *See Slattery v. Cranston School Committee*, 116 R.I. 252, 354 A.2d 741 (1976); *Pawtucket School Committee v. State Board of Education*, 103 R.I. 359, 237 A.2d 713 (1968); *Demers v. Collins*, 98 R.I. 312, 201 A.2d 477 (1964); *McKeon v. Warwick School Committee*, 77 R.I. 421, 75 A.2d 313 (1950); *Appeal of Cottrell*, 10 R.I. 615 (1873); *Appeal of Gardiner*, 4 R.I. 602 (1858). Relying on the circumstances of this case, we do not hesitate to find Lauro an "aggrieved" person. By deciding not to ask Lauro to return to work, the committee denied Lauro a significant salary increase, benefits, and continued

---

5. Lauro's response to this charge is that counsel for the committee failed to make a timely objection to Mr. Grande's representation and may not raise the issue on appeal. *Cf. Hoffman v. Sachs*, R.I., 403 A.2d 668, 670 (1979) (untimely objection to jury instructions); *Procaccianti v. Travelers Ins. Co.*, R.I., 385 A.2d 124, 125 (1978) (untimely objection to question during cross-examination). The confusion on this point, however, was caused by Mr. Grande. At the outset of the hearing, Mr. Grande stated that the Providence Teachers' Union was the appellant. After the hearing, the associate commissioner clarified the matter and stated for the record that Carl Lauro was the appellant represented by the union's agent Mr. Grande. At this point, the committee's counsel objected to union representation of Lauro.

6. Lauro paid no dues and signed no union membership card for the 1976–77 year.

7. Mr. Grande represented Lauro at the hearing before the associate commissioner but not at the appeal taken by the committee before the board or on the petition for certiorari before this court.

8. General Laws 1956 (1969 Reenactment) § 16–39–2 states:

"Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved."

employment. Section 16–39–2 was designed to allow individuals, such as Lauro, a forum before which they could bring their grievances.

■ Second, the appeal must involve a "decision" or "doing" of a school committee. Lauro's termination was the direct result of a policy decision carried out by the committee pursuant to its statutory duty to administer the Providence school system. Thus, the second requirement is satisfied.

■ Third, the committee's decision must arise under a law relating to schools or education. As one of the committee's jurisdictional objections, it claims that no school law was violated. This claim, however, embraces the merits of the case and does not resolve the jurisdictional issues. General Laws 1956 (1969 Reenactment) § 16–2–8, now amended by P.L. 1980, ch. 152, § 2, vests the "selection of teachers * * * and the entire care, control, and management of all the public school interests" in the school committee of a particular city or town. General Laws 1956 (1969 Reenactment) § 16–2–11, now amended by P.L. 1980, ch. 152, § 2, delegates the direct care and supervision of the school system in each town and city to the superintendent. Clearly, therefore, the policy of the Providence School Committee to prevent per diem substitutes from becoming "regularly employed" within the school system and the action by the assistant superintendent in carrying out that mandate arise under the laws relating to schools and education.

The committee's second jurisdictional objection concerns the union's contractual agreement to arbitrate disputes arising under the collective-bargaining agreement. By the committee's own admission, however, Lauro was not a member of the union and was not subject to the provisions of the collective-bargaining agreement. Article 1–1 of the agreement specifically excludes per diem substitutes from the bargaining unit. Although Lauro contends that he should have been recognized as a long-term

substitute, the committee may not turn this contention against Lauro and continue to argue that Lauro was properly denied this status.[9]

■ Finally, we hold that the appeal involved in the instant case falls outside the scope of § 16–13–4. That section is the exclusive jurisdictional provision for tenured teachers dismissed for cause or nontenured teachers who wish to contest nonrenewal of their contracts. *Jacob v. Burke,* 110 R.I. 661, 669, 296 A.2d 456, 461 (1972); *see Latham v. State Education Department,* 116 R.I. 245, 248, 355 A.2d 400, 402 (1976). Technically, Lauro is a nontenured teacher whose contract, albeit per diem, was not renewed. In the second *Jacob* appeal, however, we more narrowly defined appeals involving nontenured teachers which arise under § 16–13–4. In that case we stated that § 16–13–4 applied only to teachers disputing a school committee's failure to renew an annual employment contract. *Jacob v. Board of Regents,* 117 R.I. 164, 165, 365 A.2d 430, 431 (1976). The term "per diem," "used in connection with compensation, wages or salary, means pay for a day's service." *Black's Law Dictionary,* 1023 (5th ed. 1979). Furthermore, a per diem substitute's contract, continues until the end of a particular day or period of time designated by the superintendent's office; termination is automatic unless the substitute is reappointed. A per diem substitute, therefore, does not possess an annual contract, and Lauro properly sought relief through § 16–39–2. *See generally McSally v. Board of Regents,* R.I., 401 A.2d 438, 440 (1979); *Crandall v. James,* 6 R.I. 144, 148 (1859); *Randall v. Wetherell,* 2 R.I. 120, 122 (1852).

### III

■ We review decisions of the Board of Regents made pursuant to § 16–39–3 by common-law writ of certiorari. *Jacob v. Burke,* 110 R.I. 661, 669–71, 296 A.2d 456, 461 (1972); *see Slattery v. School Commit-*

9. Because of our resolution of this question we need not address the committee's objection that the commissioner was bound to dismiss

the appeal in light of an arbitrator's previous ruling on the substantive issue.

*tee of Cranston*, 116 R.I. 252, 261, 354 A.2d 741, 746 (1976). On a petition for certiorari, this court examines the record only for alleged errors of law. *Lynch v. King, supra.* In his decision, the commissioner made a factual finding that the Bridgham School principal led Lauro to believe that he would be employed until the absent teacher returned to work. *It is not our function to review the lower tribunal's findings of fact when there is competent evidence to support these findings,* *Henry v. Thomas,* 100 R.I. 564, 568, 217 A.2d 668, 671 (1966), and we do not question the commissioner's findings on this factual issue. It does not follow, however, that these representations transformed Lauro from a per diem to a long-term substitute.

General Laws 1956 (1969 Reenactment) § 16-2-32 as enacted by P.L. 1977, ch. 203, § 1, requires all school committees to maintain a policy manual that will serve as a "source * * * to govern each school system." Under the statutory scheme, there is no question that a teacher must be appointed by the school committee with the assistance of the superintendent. But there is no delegation of authority within the statutes which allows a principal independently to promote a per diem substitute to long-term status. We therefore look to the policies of the Providence School Committee to ascertain whether any delegation has been made. For the purpose of this appeal, we shall assume that such a delegation would not violate the legislative plan. Committee resolution No. 656, adopted on April 8, 1971, and revised on July 24, 1972, states in part that the committee "shall reserve to itself the function of providing guides for the discretionary action of those to whom it delegates authority. * * * They shall be recorded in writing." *Providence School Committee Policy Manual* at 8310. The duties of a school principal are outlined in a different section. The function listed that most closely approximates a delegation of authority to hire states that a principal may "[p]articipate in the selection of professional and para-professional personnel when feasible." *Id.* at 2211.2. Whatever else this provision means, it is clear that it does not place hiring authority in a principal. And this limitation would extend to a situation in which a per diem substitute could attain long-term status simply by working one extra day when a principal had indicated he could continue until an absent teacher returned. In this situation, the assistant superintendent's office informed Lauro that he was not to resume teaching, thereby preventing him from working the minimum number of days required to change his status. As a result, Lauro never became a long-term substitute.

Additionally, we observe that the authority of a public agent to bind a municipality must be actual. *See generally* 2 *Williston on Contracts* § 305 at 414–23 (Jaeger 3d ed. 1959). Consequently, any representations made by such an agent lacking actual authority are not binding on the municipality or its delegate the school committee. Here, the principal at Bridgham Middle School apparently attempted to act as a hiring agent for the Providence School Committee. He acted, however, without the actual authority necessary to bind the committee, and therefore Lauro may not rely on the school principal's representations.

Finally, we are confronted with the broader question concerning the validity of the committee's policy of actively preventing per diem substitutes from becoming long term when the regular teacher continues to be absent but no clear vacancy exists. A "clear vacancy" occurs when a physician has provided medical documentation that a teacher will be out for the remainder of the year or semester. Under article 8–7 of the collective-bargaining agreement, the committee is required to fill all absences with per diem substitutes if any are available. The agreement, however, does not require the committee to replace the regular teacher with the same per diem day after day with the possible exception of the situation in which a "clear vacancy" exists. Moreover, because per diem substitutes are excluded from the bargaining unit, this provision does not create an entitlement among per diem substitutes that they will continue

to substitute for an absent teacher for the full period of his absence.

The "clear vacancy" policy exists because of administrative and budgetary constraints. It is not an arbitrary rule but one that permits the committee to function efficiently within limited resources and to effectuate the mandate of § 16–2–18. *See McKeon v. Warwick School Committee,* 77 R.I. 421, 426–27, 75 A.2d 313, 315–16 (1950). Moreover, we cannot say that the committee acted in bad faith. When Lauro was requested to substitute for the absent teacher, he had no expectation of "regular employment," notwithstanding the unwarranted manifestations of the school principal. *See Driscoll v. Board of Education of Clifton,* 165 N.J.Super. 241, 247–48, 398 A.2d 97, 100 (1977), *aff'd per curiam,* 79 N.J. 126, 398 A.2d 90 (1979). Additionally, we hold that a decision finding Lauro a long-term substitute would usurp the statutory power of the committee to hire teachers by committee resolution. *See id.*

Nor does this result conflict with our holding in *Berthiaume v. School Committee of Woonsocket,* R.I., 397 A.2d 889 (1979). There we held that a per diem substitute who taught three-quarters of the year would attain "regularly employed" status and thereby come within the mantle of § 16–7–29. The clear implication of *Berthiaume* is that once the per diem substitute serves the required number of days, no ratification by the school committee is necessary for the substitute to attain "regularly employed" status. That holding, however, does not preclude the kind of counteractant measures taken by the committee to stop Lauro from becoming "regularly employed" through the *Berthiaume* exception.

The petition for certiorari is granted, the decision of the Board of Regents for Education is quashed, and the record in the case is ordered returned to the board with our decision endorsed thereon.

SHEA, J., did not participate.