*In re* Rhode Island Suburban Railway Company.

PROVIDENCE—MARCH 5, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Eminent Domain.   Public and Private Use.*

An act in amendment of an act to incorporate the Rhode Island Suburban Railway Company, passed May 4, 1900, authorized the company to acquire by condemnation such lands in any town as said company might take, in manner provided, for its *corporate* purposes.   Section 4 provided that the court should first determine whether the lands are necessary to said company for its *corporate* purposes.   The company sought to condemn a lot in the city of Providence for a power-house to generate electricity for its lines of road, for coal-pockets for the storage of coal, and for a conduit to carry water from the river to an engine :—

*Held*, that the use was not a public one, but for the private benefit of the company, and hence not necessary within the meaning of the statute.

(2)  *Eminent Domain.   Public Uses.*

The question whether the use for which private property is to be taken is public or private is for judicial determination.

(3)  *Public Use.*

The test of a "public use" is whether the taking is essential to the service of the public franchise, or whether it pertains only to the private interests of the company in the details of its business.

PETITION FOR THE CONDEMNATION OF LANDS under the provisions of an act in amendment of an act to incorporate the Rhode Island Suburban Railway Company, passed May 4, 1900.   Petition dismissed.

STINESS, C. J.    The Rhode Island Suburban Railway, acting under the provisions of its charter, instituted proceedings to condemn a lot of land, in Providence, belonging to James Campbell and wife.    The charter requires the Common Pleas Division to examine the plat of location, to hear the parties, and to determine whether the lands described are necessary to said company for its corporate purposes.

In this case the company seeks to condemn a lot for a power-house to generate electricity for its lines of road, for coal-pockets for the storage of coal, and for a conduit to carry water from the river to the engine.    The judge who heard the application decided that the taking was necessary and for a public use.    The land-owner petitions for a new trial, on the ground of error in the findings.

(2)    As we have already stated in this case, in regard to the constitutionality of the act, the legislature has no right to condemn private property for any other than public purposes. The legislature determines in what cases and to what extent the power of condemnation shall be exercised ; but whether the use in a particular case is a public use is a question of law to be settled by the court.    The statute in this case, as we have construed it, calls for a finding of the necessity for a public purpose, because only such " corporate purposes " as are in their nature *public* purposes can be considered to constitute a necessity within the meaning of the statute.

(1)    Two kinds of public use are recognized : one where the State itself takes property for its own uses, and another where it authorizes the taking for the use of the public.    The former is a demonstrative act which of itself shows its public purpose ; the latter, in many cases, may be of such doubtful character as to require the determination of the court whether the authority can be exercised.

Our constitution says : " Private property shall not be taken for public uses without just compensation."

The implication of the right to take is not for the convenience or advantage of the public, but " for public uses."    There are many kinds of business of great benefit to the public generally which could not be claimed to warrant a taking of prop-

erty as for a public use. If private property is to be taken, it must be for a use by the public. Thus, in condemnations for highways or railroads, the public use the land by traveling over it; for depots, public buildings, and parks, by resorting to them; for water-works and drains, by employing their service. These are cases where the public use is direct and obvious. But there is a class of cases where the public does not use the land itself, and yet the public necessity is so direct and obvious as to imply a public use. Such, for example, are cases of taking land for engine-houses, car-houses, and repair-shops on steam railroads. These buildings must necessarily be contiguous to the railroad; and while the public may not use the buildings as such, yet they are of such a character that without them the public could not adequately use the railroad itself. They are, in fact, a part of the railroad. In some cases land for the storage of wood and coal for steam railroads has been held to be taken for a public use. In all these cases, however, a particular location is made necessary because of the requirements of a steam railroad.

Arguing from such cases, the petitioner claims that it is equally entitled, under its charter, to condemn land, anywhere in the four counties named, for a power-house and for coal-pockets. The wide area of location at once suggests the difference between the freedom of choice in this case and the imperative necessity which is usually found on steam railroads for a particular location.

We do not question that the term "necessary," as used in the statute, does not mean an absolute necessity in the sense that the particular land is indispensable, but rather that the land, or other similarly situated, is reasonably required for a public purpose. It is also beyond question that everything which may be necessary for "corporate purposes" is not, by that reason, necessary for public purposes. A common carrier serves both the public and itself. It has its public and private functions. The public part is the exercise of its franchise for the accommodation of the parties; the private part is its incidental business, with which the public is not concerned, and which the company manages for its own interests.

The company carries passengers over its road as a public duty ; but the generation of the power to propel cars is the private business of the company. Whatever is necessary to the exercise of the franchise is for the benefit of the public ; but that which pertains simply to means of supply is the private business of the company.

The argument is that power is absolutely essential to run the cars, and that this concludes the question of necessity for a power-house ; that there can be no power without coal, and hence the necessity of coal-pockets. We may readily grant that these are things which the company must supply in order to run its road, but it does not follow that the company has the power to take private property for these purposes. The public has no interest in the source of supply, whether the power is purchased, as some of it is at present ; or whether each branch of the road has its own station, as is now the case with two branches ; or whether there is one central station, which is sought for in this proceeding. Neither is it of interest to the public whether the cars are run by trolley or by storage batteries. The company is not limited to a particular location for a power-house, for coal-pockets, or for a water supply. This is evident from the fact that the lot which the company here seeks for a power-house is about five miles from the nearest point on the company's road. The location is claimed as a central point of the system, but this is a matter of convenience to the company, not of necessity. It involves the taking of land for the purposes of the company in the city of Providence, when another company has the exclusive right to run cars in that city. This company, then, must convey its power five miles before it can reach its own road. It is in evidence that it now goes over the lines of other roads for that distance. If this should continue, the result would be that land in Providence would be taken, by a company having no right to a road in Providence, to generate power to be used in part by another company which has not condemned the land for that purpose. It is evident that this proceeding is for the private benefit of the company and not for the public use. On steam roads the power must be generated in

the locomotives on the tracks.   It cannot be transmitted from another place.   There is, therefore, a plain distinction between this case and those already referred to which have held engine-houses to be necessary for a steam road.   In *Eldridge* v. *Smith*, 34 Vt. 484, the distinction is clearly brought out between those things which are necessary for serving the public and those which relate only to the conduct of the business.

*In re Eureka Basin Co.*, 96 N. Y. 42, the court said : "The taking of private property for private purposes cannot be authorized even by legislative act, and the fact that the use to which the property is intended to be put, or the structure intended to be built thereon, will tend incidentally to benefit the public is not sufficient to bring the case within the exercise of eminent domain, so long as the structures are to remain under private ownership and control and no right to their use or to direct their management is conferred upon the public."   See also *State* v. *Mansfield*, 23 N. J. Law, 510 ; *Tyler* v. *Beacher*, 44 Vt. 648 ; *Bloodgood* v. *Mohawk R. R.*, 18 Wend. 9.   Cooley's Const. Lim. 6 ed. 654, says:   "The public use implies a possession, occupation, and enjoyment of the land by the public at large or by public agencies."

If the condemnation of land in this case for a power-house and coal-pockets is legal, then land for any building which may be required in the business of the company can also be condemned, which would carry the power to an extent never before exercised in this State.

(3)     There has been considerable diversity of decision as to what constitutes a public use, and it is impossible to lay down a rule of universal application.   We think, however, that the line of distinction to which we have referred is one which may be traced in all well-considered cases, and that the true test of such use is whether the taking is essential to the service of the public franchise, or whether it pertains only to the private interests of the company in the details of its business. The former constitutes a public use and the latter does not. The lot in question is a wharf lot on Providence river.   The testimony shows that the principal reason for selecting it is the convenience of getting coal to it on tide-water, and the

fact that it adjoins the lot of the Union Railroad Company. These are purely private reasons, and affect only the private interest of the company. The simple fact that the company must have a power-house somewhere does not convert this necessity into one for a public use.

We think it is clear that the taking in this case is not a taking for a public use, and hence not necessary within the meaning of the statute.