**365 A.2d 430.**

Claire Jacob *vs.* Board of Regents for Education *et al.*

NOVEMBER 4, 1976.

Present: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is certiorari.[1] The petitioner is a schoolteacher who is certified to teach in the public schools of this state. These proceedings mark the second time that we have been asked to review the refusal of the South Kingstown School Committee to renew the petitioner's employment contract for the 1971-72 school year. Earlier, in *Jacob v. Burke*, 110 R. I. 661, 296 A.2d 456 (1972), we marked the trail that must be taken by a tenured teacher who seeks judicial assistance in challenging a dismissal or a nontenured teacher who seeks to dispute a school committee's failure to renew the annual employment contract. Such a teacher, we said, must first seek a hearing before the school committee and from there proceed to the State's Commissioner of Education, to the Board of Regents, and then to the Superior Court.[2] In *Jacob* No. 1 the petitioner had instituted her Superior Court action

---

[1]The petitioner took an appeal from the judgment that was entered in the Superior Court. The school committee sought to dismiss her appeal on the grounds that review of Superior Court judgments involving teacher dismissals or contract nonrenewals should be by way of certiorari. The committee's action was based upon a holding in *Schiavulli v. School Comm.*, 114 R. I. 443, 334 A.2d 416 (1975). We denied the motion and ordered that the notice of appeal be treated as a petition for certiorari. We granted the petition and issued the writ. *Jacob v. Board of Regents for Educ.*, 114 R. I. 960, 338 A.2d 168 (1975).

[2]Recently in *Slattery v. School Comm.*, 116 R. I. 252, 261, 354, A.2d 741, 746 (1976), we reported another facet of *Jacob v. Burke*, 110 R. I. 661, 296 A.2d 456 (1972), i.e., judicial review of administrative decisions involving individuals other than tenured teachers dismissed for cause or nontenured teachers whose contracts are not renewed comes from the Board of Regents to this court by way of common law certiorari rather than by way of an appeal to the Superior Court. Again during our 1975-76 term we also stressed that even though all decisions of the Board of Regents are exempt from review under the provisions of the Administrative Procedures Act, the tenured or nontenured pedagogue still has an express right of appeal by virtue of §16-13-4 to the Superior Court provided that the appeal is taken within "a reasonable time." *Latham v. State, Dep't of Educ.*, 116 R. I. 245, 249-50, 355 A.2d 400, 402-03 (1976).

after receiving an adverse decision from the commissioner, and we told her that she could not invoke judicial aid until she had exhausted her administrative remedies. Consequently, she then returned to the administrative level, where she was heard by the Board of Regents. The regents sustained the commissioner's affirmance of the school committee's refusal, and the petitioner, having touched all the administrative bases, once again sought relief in the Superior Court. There a justice of that court upheld the school committee's refusal to rehire the petitioner. Now, at long last, she can be heard in this court as to why she thinks the school committee erred. Hereinafter we shall refer to the petitioner by her first name, Claire.

In her present appearance before us, Claire raises several points. However, there are but two questions that are pivotal to her ultimate success: First, whether she was prejudiced by the fact that only five of the seven members were present when she appeared before the school committee to challenge her nonretention; and, second, whether she was on tenure when the contract was not renewed and, therefore, entitled to a hearing and a finding by the committee that its refusal to renew was motivated by good and just cause. We believe that Claire was entitled to a hearing before the full committee but that upon receiving notice of the nonrenewal she could be terminated without a finding of good and just cause.

The statutes relative to the composition of the board are G. L. 1956 (1969 Reenactment) §16-13-2, as amended by P. L. 1970, ch. 222, and §16-13-4. In its pertinent parts the amended version of §16-13-2 provides that teaching service in the public elementary and secondary schools of this state shall be on the basis of an annual contract which shall be considered to be a continuous agreement unless the school authorities notify a teacher on or before March 1 of the then school year that the contract for the ensuing

year will not be renewed, and any teacher whose contract is not renewed shall be provided with a "statement of cause" for the nonrenewal. Any such individual is entitled to a hearing and an appeal, which are provided by §16-13-4. This latter section enables a dissatisfied teacher to have either a public or private hearing, as he or she wishes, before the "full board," with an initial appeal from any adverse result to the Commissioner of Education.

One bone of contention lies in the parties' differing interpretations of the meaning of "full board." Claire argues, with the appeal of logical simplicity, that "full board" is to be read literally and that a hearing before only five of the seven committee members violates the statute. The regents, on the other hand, claim that since a quorum of the board was present, this suffices.

Admittedly, in *Domestic Safe Deposit Co.* v. *Hawksley*, 111 R. I. 224, 301 A.2d 342 (1973), we alluded to the well-recognized principle that a majority constitutes a quorum, and if a quorum is present, the legislative, judicial, or administrative body has authority to act on those matters coming within its jurisdiction. However, we qualified this principle by saying that it was applicable only *in the absence of persuasive circumstances or a statutory directive to the contrary.*

In *May-Day Realty Corp.* v. *Zoning Bd. of Review*, 77 R. I. 469, 77 A.2d 539 (1950), this court addressed the question of whether a zoning board of review can properly act when one of its members is not present. There, the legislation relative to zoning boards specifically provided for the appointment of an auxiliary or sixth member who would sit in the absence or inability of some other board member to serve at any hearing. General Laws 1956 (1970 Reenactment) §45-24-14. In the *May-Day* case we ruled that the General Assembly, by enacting this legislation, had intended that a zoning board, if it was to properly

exercise its jurisdiction when considering matters within its area of responsibility, was required to consist of five participating members.

Section 16-13-4 does contain a similar statutory mandate. It says in plain, simple, and direct language that a teacher can request a hearing before the "full board." The "full board" language was placed there for a purpose, and it is our duty to implement this purpose. We cannot go beyond the unambiguous and seek a different meaning. Thus, Claire is and was entitled to be heard and have her cause considered by all seven committee members.

Having determined that Claire is entitled to the full board hearing, the question remains as to the standard to be employed by the committee in considering the nonrenewal of her contract. She contends that she was a tenured teacher whose employment could only be terminated for "good and just cause" pursuant to §16-13-3. Alternately, she asserts that even if she is not tenured, the 1970 amendment of §16-13-2 grants to the nontenured teacher the same rights as the tenured teacher vis-à-vis the good and just cause standard.

Claire's initial argument on tenure is predicated on §16-13-8:

> "Any teacher in continuing service who voluntarily resigns, and transfers to another community in Rhode Island without interrupting his professional career, shall be considered to remain under tenure unless such teacher is notified to the contrary, in writing, prior to March 1 of the second school year in which the teacher transfers."

Prior to her South Kingstown employment, Claire had taught for 6 consecutive years in North Kingstown and then 3 continuous years in Hopkinton. Her transfer to South Kingstown did not interrupt her professional career. Claire asserts that the language "remain under tenure" means

that she entered the South Kingstown school system as a tenured teacher and that, therefore, nonrenewal must be supported by a finding of "good and just cause." We cannot accept that reading of the statute because to do so would be to rule that a teacher, having once attained tenure in any school system, could transfer that status to another school system, depriving the second school committee of the opportunity of making its own evaluation of the transferee's professional competence.

A full understanding of §16-13-8 can be gained only by comparing it to §16-13-3. There the key to tenure is the successful completion of three successive annual contracts which constitute a probationary period. Thus, to acquire tenure in a municipality, a new teacher must pass muster for 3 years. Once a teacher has successfully completed the probationary period, such an individual has acquired status as a tenured teacher who can only be dismissed for good and just cause after a hearing held by the school committee. *Schiavulli* v. *School Comm.*, 114 R. I. 443, 447, 334 A.2d 416, 418 (1975).[3] On the other hand, the journey for one who has acquired tenure in one school system and transfers to another is not quite as prolonged. Section 16-13-8 bestows tenure on the transferee unless he or she is notified to the contrary by March 1 of the second year. The probationary period for the transfer-teacher is accordingly shortened from 3 to 2 years but is not entirely abrogated.

Claire's second argument on this point is that the 1970 amendment of §16-13-2, which gave to nontenured teach-

[3]We should point out that nonrenewal of a nontenured teacher's contract is to be distinguished from a dismissal of a nontenured teacher during the contract year. Any committee which dismisses a nontenured teacher during the school year is required to afford the teacher a hearing at which just cause for the committee's action must be shown. General Laws 1956 (1969 Reenactment) §16-12-6; *Town of North Kingstown* v. *Robinson,* 99 R. I. 348, 207 A.2d 389 (1965).

ers the right to a hearing and appeal upon nonrenewal of a contract, also afforded them the protection of dismissal only for "good and just cause." The problem with this argument is that there is no indication whatever in either §16-13-2 or §16-13-4 that the "good and just cause" standard enunciated in §16-13-3 is thereby incorporated for nontenured teachers. This legislative silence is a significant indication that while the school committee must give the nontenured teacher who is not rehired the reasons or causes for its decision, the committee was not bound to defend its action by a showing of just cause for the result it reached.

In construing a statutory provision similar to §16-13-2, the court in *Devlin* v. *Bennett,* 26 Conn. Supp. 102, 213 A.2d 725 (1965), said:

"The fundamental purpose of the hearing is to give a probationary teacher who has already been acquainted with the reasons why a board of education has decided not to renew his contract a full and fair opportunity to persuade and convince the board that it is mistaken in that decision." *Id.* at 111, 213 A.2d at 731.

So, too, we believe that §16-13-2 gives the probationary teacher a chance to question the decision regarding his contract of employment while at the same time maintaining the distinction between the tenured and the nontenured teacher.

The Legislature, in affording nontenured teachers an opportunity to learn the reasons why the committee did not rehire them, did by legislative fiat what has been done by judicial fiat, most notably in *Drown* v. *Portsmouth School Dist.,* 435 F.2d 1182 (1st Cir. 1970), and *Donaldson* v. *Board of Educ.,* 65 N. J. 236, 320 A.2d 857 (1974). Both courts, in ruling that a nontenured teacher was entitled to know why he or she was not reengaged, observed that a statement of deficiencies can enable the teacher to em-

bark on a program of self-improvement, correct any false information or rumors, explain away incorrect impressions, and possibly uncover any constitutionally impermissible reasons for nonretention. We would also add that the statement of reasons and hearing provisos promulgated by our Legislature can act as a brake on any committee's desire to indulge in an arbitrary abuse of the exercise of its discretionary power. It should be emphasized that the §16-13-2 hearing sought by the teacher casts no burden of proof on the committee. The burden of persuasion remains on the teacher to convince the committee that it was mistaken when the committee reached the conclusion that it did.

While the hearing contemplated by §16-13-2 is not quasi-judicial in nature, the committee does have a duty to listen to a dissatisfied teacher in an objective manner and fairly consider its original decision. The fact that the General Assembly has mandated a hearing before the full committee carries with it the implicit reasonable hope that those who are heard might be heeded. *Golden Gate Corp.* v. *Town of Narragansett,* 116 R.I. 552, 359 A.2d 321 (1976).

Since it is obvious by now that this controversy must be reconsidered by the South Kingstown School Committee, we would add a brief comment or two on some of the contentions made by the parties. There is some disagreement as to the part the Commissioner of Education plays in the appellate process. The hearing before the commission is de novo. In *Jacob* No. 1 at 671, 296 A.2d at 461, it was emphasized that the administrative review available to a teacher is identical to that afforded to "any other person aggrieved." Within recent times we have stressed that appellants appearing before the commissioner are entitled to a de novo hearing. *Slattery* v. *School Comm.,* 116 R.I. 252, 354 A.2d 741 (1976); *Altman* v. *School*

*Comm.,* 115 R. I. 399, 347 A.2d 37 (1975). Claire has maintained through this litigation that the review given her at the commissioner's level was a nullity because the hearing was conducted and the findings made by an assistant commissioner. Whatever the situation might have been then, the statute now makes it clear that the commissioner is empowered to *"supervise"* the interpretation and deciding of "such controversies as may be appealed to him from decisions of local school committees." Section 16-49-6(8)(h). Prior to the 1973 amendment the commissioner was charged with the sole responsibility of deciding controversies that found their way to him. Section 16-1-5(j) It is obvious from the amendment that the commissioner can designate his assistants to preside and decide disputes which had their inception at the municipal level.

Finally, Claire claims that the evaluations made by her principal violated certain provisions of the collective bargaining agreement. Assuming such to be the case, she should have invoked the grievance procedures delineated in the agreement. While she is free to raise this point when she appears before the committee, this particular contention is totally irrelevant to the controversy presently before us.

The petition for certiorari is granted, the decision of the Superior Court is quashed, and the papers in the case are remanded to the Superior Court with our decision endorsed thereon.

*Natale L. Urso,* for petitioner.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for School Committee of South Kingstown, for defendant.