John CICCONE

v.

CRANSTON SCHOOL COMMITTEE.

No. 84–166–M.P.

Supreme Court of Rhode Island.

Aug. 1, 1986.

Richard A. Skolnik, Lipsey & Skolnik, Providence, for plaintiff.

Vincent J. Piccirilli, Palombo & Piccirilli, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on petition for common law writ of certiorari filed by John Ciccone (petitioner). The petitioner alleges that the State Board of Regents for Elementary and Secondary Education erred in determining that a tenured teacher suspended for cause is not entitled to receive notice of the suspension pursuant to the schedule set forth in G.L.1956 (1981 Reenactment) § 16–13–2. The facts are as follows.

The petitioner is a tenured teacher in the Cranston school department. In a letter dated February 11, 1982, the Cranston superintendent of schools (superintendent) notified petitioner that he would recommend to the school committee at its meeting on February 22, 1982, that petitioner be suspended at the end of the 1981–82 school year. According to the letter, petitioner was to be suspended because "anticipated lack of adequate budgetary allocation may well make impossible the retaining of the professional staff as it existed in the past."

The petitioner attended the February 22, 1982 meeting and was present when the school committee, acting on the superintendent's recommendation, voted to suspend him at the end of the 1981–82 school year.

In a letter dated March 2, 1982, the superintendent informed petitioner of the action taken by the school committee at the February 22nd meeting and reiterated the reason for the suspension as the "anticipated lack of adequate budgetary allocation."

Subsequent to the school committee's vote, petitioner requested a hearing before the school committee regarding his suspension. The hearing was held on February 15, 1983. The petitioner was present and was represented by the executive secretary of the Rhode Island Federation of Teachers.

In a letter dated April 15, 1983, the chairman of the school committee informed petitioner that the school committee had voted to sustain its February 22, 1982 decision to suspend petitioner at the end of the 1981–82 school year. The petitioner appealed the school committee's decision to the State Commissioner of Elementary and Secondary Education (commissioner). Thereafter by decision dated September 15, 1983, the associate commissioner denied the appeal.[1]

The petitioner then appealed to the Board of Regents for Elementary and Secondary Education (board of regents), alleging that the school committee erred in not providing him with a written notice of the suspension as required by § 16–13–2.[2] The board of regents denied petitioner's appeal, thereby affirming the commissioner's decision.

On March 28, 1984, petitioner filed a petition for common law writ of certiorari. This court entered an order issuing the writ on June 14, 1984.

This case presents two issues: (1) whether the provisions of § 16–13–2, relating to automatic continuation of annual teaching contracts, apply to the suspension of a ten-

---

1. The State Commissioner of Elementary and Secondary Education may designate associate commissioners to preside over and decide disputes that have had their inception at the municipal level, G.L.1956 (1981 Reenactment) § 16–1–5(j), § 16–60–6(9)(h), as amended by P.L.1981, ch. 291, art. 13, § 2. *Jacob v. Board of Regents for Education,* 117 R.I. 164, 172, 365 A.2d 430, 434 (1976).

2. General Laws 1956 (1981 Reenactment) § 16–13–2 provides:
   "Teaching service shall be on the basis of an annual contract, except as hereinafter provided, and such contract shall be deemed to be continuous unless the governing body of the schools shall notify the teacher in writing *on or before March 1* that the contract for the ensuing year will not be renewed; provided, however, that a teacher, upon request, shall be furnished a statement of cause for dismissal or nonrenewal of his contract by the school committee; provided further, that whenever any such contract is not renewed or said teacher is dismissed, said teacher shall be entitled to a hearing and appeal pursuant to the procedure set forth in § 16–13–4." (Emphasis added.)

ured teacher and (2) whether the procedural provisions of § 16–13–4,[3] relating to dismissal of a teacher, apply to the suspension or layoff of a tenured teacher. We answer both issues in the negative.

## I

The petitioner argues that the purpose of § 16–13–2 is to accord any teacher, tenured or nontenured, the right to receive notice prior to March 1 of any school year in which their "services" are not going to be required and the right to a hearing, if so requested by the nonrenewed teacher. In accordance with that statute, petitioner contends that the school committee was required to give him written notice of his impending suspension on or before March 1, 1982.

The school committee determined that since petitioner was a tenured teacher, it was not required to give him the notice provided for in § 16–13–2. On appeal to the commissioner, the associate commissioner held that pursuant to § 16–13–2, a school committee is required to furnish notice in writing on or before March 1 to any regular teacher, tenured or nontenured, if that teacher's contract is not going to be renewed for the upcoming school year. However, the associate commissioner concluded that since petitioner was present at the meeting when the school committee voted on his suspension, he was not materially prejudiced even though the school committee failed to comply with the exact terms of the statute.

3. Section 16–13–4 provides:
"Statement of cause for dismissal shall be given the teacher in writing by the governing body of the schools at least one (1) month prior to the close of the school year. The teacher may, within fifteen (15) days of such notification, request in writing, a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board

Thereafter, the board of regents concluded that petitioner's appeal should be denied but expressly rejected the application of § 16–13–2. Quoting a previous board of regents' decision, the board of regents stated:

"We are also convinced that Section 16–13–2, which speaks in terms of 'annual contract, except as hereinafter provided' cannot apply to the nonrenewal of a tenured teacher's contract for the very basic reason that Section 16–13–3 provides that tenured teachers 'shall be considered in continuing service' and thus not on an annual contract basis. Obviously a continuing service contract cannot be subject to nonrenewal.

\* \* \* \* \* \*

"It seems equally clear to us that all references to teachers in section 16–13–2 relate to those teachers who are on an annual contract and thus not to tenured or 'continuing service' teachers."

An examination of the provisions of § 16–13–2 reveals that the notice requirement refers expressly to the nonrenewal of teaching contracts. The contract of a tenured teacher is not subject to renewal or nonrenewal. In fact, it is that element of permanence that distinguishes a tenured teacher from a nontenured teacher.

The Legislature, in enacting § 16–13–3, specifically defined the nature of tenure as "continuing service," and has further provided that a tenured teacher shall not be dismissed "except for good and just cause."[4] Accordingly, a teacher who has acquired tenure need not anxiously await

shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court."

4. Section 16–13–3 provides in part:
"Three (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers who have given satisfactory service for three (3) years prior to April 24, 1946, and thereafter those who shall complete the probationary period, shall be considered in continuing service. No such teacher shall be dismissed except for good and just cause."

renewal of his teaching contract from one year to the next, whereas a nontenured teacher annually faces the prospect that his or her teaching contract will not be renewed. It is that possibility of nonrenewal that the notice provisions of § 16–13–2 were designed to address.

Additionally, § 16–13–2 states that a teacher's service "shall be on the basis of an annual contract, *except as hereinafter provided,* and such contract shall be deemed to be continuous unless the governing body of the schools shall notify the teacher in writing on or before March 1 that the contract for the ensuing year will not be renewed * * *." The Legislature sought to create a clear distinction between annual contracts, which enjoy the safeguard of the March 1 notice deadline, and other contracts "as hereinafter provided." An examination of the Teachers' Tenure Act, chapter 13 of title 16, reveals that the only other teaching status provided for by statute is that of tenure.

■ Accordingly, we believe that the notice provisions of § 16–13–2 clearly apply only to the nonrenewal of a nontenured teacher's annual contract. For that reason, petitioner, as a tenured teacher, was not entitled to receive notice of his impending suspension prior to March 1.

## II

The petitioner next argues that not only was he entitled to receive the notice provided for in § 16–13–2 but he was further entitled to the hearing and appeal procedure set forth in § 16–13–4. According to petitioner, the procedural avenues of § 16–13–4 are dependent upon proper notice being given pursuant to § 16–13–2. The petitioner's argument is without merit. Section 16–13–4 clearly provides both tenured and nontenured teachers the right to receive a written "[s]tatement of cause for dismissal * * * at least one (1) month prior to the close of the school year." Within fifteen days of such notification, a teacher may submit a written request for a hearing before the full board. There is nothing in the language of either § 16–13–2 or § 16–13–4 that suggests that the notice provision of § 16–13–2 must be invoked in order to trigger the procedural provisions of § 16–13–4.

■ In any event, we do not believe, in the circumstances of the instant case, that petitioner is entitled to the benefit of the § 16–13–4 hearing and appeal procedure. In so concluding, we are mindful of the significant distinction between a school committee's action to suspend a teacher and its action to dismiss a teacher permanently. In fact, this court has recognized an intent by the Legislature to "vest in the school committees of the cities and towns wider latitude when acting to suspend than that conferred upon them when the question is one of final dismissal." *Royal v. Barry,* 91 R.I. 24, 32, 160 A.2d 572, 576 (1960). Such intent is expressly evident in the provisions of § 16–13–5, which provides in part, "[s]ection 16–13–4 shall not prevent the suspension of a teacher for good and just cause."

Thus, we believe that the appeal provisions of § 16–13–4 more properly relate to the procedure to be invoked by a teacher who faces permanent dismissal. We have previously expressed this principle in *School Committee of Providence v. Board of Regents for Education,* 429 A.2d 1297, 1301 (R.I.1981), in which we identified § 16–13–4 as the "exclusive jurisdictional provision for tenured teachers *dismissed* for cause or nontenured teachers who wish to contest nonrenewal of their contracts." (Emphasis added.) *See also Jacob v. Burke,* 110 R.I. 661, 669, 296 A.2d 456, 461 (1972). Thus, although § 16–13–4 does provide procedural protection to tenured teachers, we are of the opinion that the protection only extends to tenured teachers who face permanent dismissal.

Tenured teachers who are suspended for "good and just cause" are not left without a remedy. In *Royal v. Barry,* 91 R.I. at 32, 160 A.2d at 576, the court determined that a hearing is not required before sus-

pension and if, following suspension, none is requested, none is required. However, if a hearing before the school committee is requested by the suspended teacher, any appeal from an adverse decision by the school committee is to the State Commissioner of Elementary and Secondary Education pursuant to G.L.1956 (1981 Reenactment) § 16–39–2. *Id.; see also Bray v. Barry*, 91 R.I. 34, 39–40, 160 A.2d 577, 580 (1960). Thus, in enacting chapter 39 of title 16, the Controversies in School Matters Act, the Legislature has created an express procedural route of review to be followed by "[a]ny person aggrieved by any decision or doings of any school committee * * *."[5] Specifically, the route of review is from the school committee to the State Commissioner of Elementary and Secondary Education and then to the State Board of Regents for Elementary and Secondary Education. If, after this combination of appeals has been exhausted, a party is still aggrieved, judicial review may be requested from this court by petition for common law writ of certiorari. *E.g., Corrigan v. Donilon*, 433 A.2d 198 (R.I.1981); *Bristol School Department v. Board of Regents for Education*, 121 R.I. 143, 396 A.2d 936 (1979); *Jacob v. Board of Regents for Education*, 117 R.I. 164, 365 A.2d 430 (1976); *Latham v. State Department of Education*, 116 R.I. 245, 355 A.2d 400 (1976). On petition for certiorari this court examines the record only for alleged errors of law. *School Committee of Providence*, 429 A.2d at 1302.

In view of the foregoing analysis, we believe the board of regents in the instant case did not err in determining that the petitioner, as a tenured teacher, was not entitled to receive the notice provided for in § 16–13–2. Nor was the petitioner entitled to invoke the procedural provisions of

§ 16–13–4. Accordingly, the petition for certiorari is hereby denied and dismissed and the writ heretofore issued is quashed. The record in the case may be remanded to the board with our decision endorsed thereon.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.

---

5. General Laws 1956 (1981 Reenactment) § 16–39–2 provides:
"Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to

the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved."
Section 16–39–3 provides:
"Any decision of the commissioner in such matters shall be subject to an appeal to and review by the board of regents for education."