**In re NARRAGANSETT ELECTRIC COMPANY.**

Nos. 85–112–M.P., 85–113–M.P.

Supreme Court of Rhode Island.

June 23, 1988.

Bradford Gorham, Gorham & Gorham, Inc., Anthony B. Sciarretta, Providence, for petitioner.

Peter V. Lacouture, Tillinghast, Collins & Graham, Providence, Arthur Peter Lovely, Asst. Atty. Gen., Ronald A. Lebel, Rhode Island Legal Services, Portsmouth, for respondent.

## OPINION

MURRAY, Justice.

A group of landowners (landowners) have filed a petition for a statutory writ of certiorari pursuant to G.L. 1956 (1984 Reenactment) § 39-5-1 from a final report and order by the Rhode Island Public Utilities Commission (commission) granting the Narragansett Electric Company (Narragansett) the authority to condemn, under powers of eminent domain set forth in G.L. 1956 (1984 Reenactment) § 39-1-31, properties in the State of Rhode Island.[1] Nar-

---

1. The Rhode Island Attorney General also filed a petition for a writ of certiorari (No. 85-113- M.P.). However, according to the record, by stipulation dated September 30, 1987, the peti-

ragansett seeks to effect the construction of a 345–kilovolt transmission line between electric substations located in Burrillville and Warwick, Rhode Island. We affirm the final report and order made by the commission.

On August 17, 1979, Narragansett filed a petition seeking authority to condemn properties in order to obtain a right-of-way approximately 150 feet in width for the purpose of constructing a transmission line traversing 44 miles.[2] In the original petition, Narragansett sought authority to condemn, either by easement or in fee, thirty-one tracts of land. Subsequent filings to amend the original petition were granted in order to allow Narragansett to implement recommendations concerning the environmental impact on wetlands and to reroute the proposed transmission line around property owned by the Rhode Island Audubon Society. Consequently Narragansett revised its original request and sought to condemn twenty-one rather than thirty-one tracts of land. The commission issued notice to the appropriate parties, and through various local newspapers, notice of the pending petition and scheduled hearings was published.

Thereafter, on November 29, 1979, hearings commenced and continued on sixteen separate hearing days, concluding in November 1983. The commission heard testimony and received evidence from twenty-one witnesses. On February 28, 1985, the commission issued a final report and order (docket No. 1440), 65 P.U.R.4th 198, granting Narragansett's petition and request for authority to proceed with condemnation subject to the provisions and conditions set forth in the order. The commission attached conditions requiring that Narragansett shall (1) avoid or relocate any Indian burial grounds encountered in the construction, (2) draft and file a transmission line construction and maintenance plan, and (3) file an affidavit between January 1, 1988,

and June 30, 1988, attesting to the existing need for the transmission line, the company's desire to proceed with condemnation, and its intent to proceed forthwith and complete the project in a timely manner.

The petitioning landowners are six owners or partial owners of the twenty tracts of land that Narragansett was granted authority to condemn. The landowners contend that the commission erred in granting Narragansett authority to condemn their properties and assign as error: (1) the final order and report is invalid because only two members of the commission rendered the decision; (2) the statutory prerequisites for condemnation required by § 39–1–31 were not satisfied; (3) the need for the transmission is not within the reasonably foreseeable future; (4) the commission failed to give adequate consideration to the environmental impact of the proposed transmission line as required by article I, section 17, of the Rhode Island Constitution; and (5) subjecting the final report and order to conditions violates the landowners' rights. We do not agree with the landowners' contentions.

Prior to reviewing the landowners' contentions, we recognize that our role in reviewing public-utilities commission's decisions is to determine whether the commission's ruling was lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence. *Roberts v. Narragansett Electric Co.*, 490 A.2d 506, 507 (R.I. 1985). " [T]he commission's findings enjoy a presumption of reasonableness until shown to be clearly, palpably, and grossly unreasonable by clear and convincing evidence.' " *Block Island Power Co. v. Public Utilities Commission*, 505 A.2d 652, 653 (R.I. 1986); *New England Telephone and Telegraph Co.*, 116 R.I. 356, 377, 358 A.2d 1, 15 (1976).

I

■ The landowners contend that the final report and order is invalid because only

tion was withdrawn. Therefore, we need only consider the contentions set forth by the landowners (No. 85–112–M.P.).

2. The Narragansett Electric Company is authorized by charter to exercise the right of eminent domain pursuant to 1964 R.I. Acts and Resolves

904–916, and 1976 R.I. Acts and Resolves 87–89. The company's authority to exercise the right of eminent domain is subject to approval by the Public Utilities Commission as provided in G.L. 1956 (1984 Reenactment) § 39–1–31.

two members of the commission participated in the final decision. The landowners argue that the Public Utilities Commission comprises three members and the entire commission must participate in the deliberations and the final decision. In support of their argument, the landowners cite § 39-1-6, which provides for situations in which a commissioner's term has expired and the commissioner has participated in all or a substantial part of the proceedings. In that instance, § 39-1-6 mandates that the commissioner shall participate in deciding the matter and sign findings, orders, and judgments. This statute is not applicable to the case at bar. The nonparticipating commissioner was not absent because his term on the commission had expired. Rather, it was stated at oral argument that Commissioner Andrew Niven resigned from the commission to pursue employment in California. The applicable statute, § 39-1-8, empowers the commission to proceed with two members of the commission present and provides in part, "[t]wo (2) commissioners shall constitute a quorum for the transaction of any business, except as provided in § 39-1-11." Section 39-1-11 states that "[t]he presence of one (1) commissioner shall constitute a quorum at all hearings provided that the concurrence of a majority of the commission shall be required for the rendering of a decision." We interpret the foregoing statutory language to provide that participation by two members of the commission is permitted and therefore findings, decisions, and orders rendered by two commissioners are valid.

The landowners rely on cases in which a requirement of full consideration by all members is imposed on other tribunals including school committees and zoning boards. *Jacob v. Board of Regents for Education*, 117 R.I. 164, 365 A.2d 430 (1976) (teacher whose contract was not renewed was entitled to hearing regarding tenure before full school committee and not merely a quorum thereof as specifically provided by G.L. 1956 (1969 Reenactment) § 16-13-4); *Kent v. Zoning Board of Review of Cranston*, 102 R.I. 258, 229 A.2d 769 (1967) (statutory language provides for assured participation of five-member board in cases involving appeals from building inspector and requests for variance in zoning). The landowners' reliance on these cases is misplaced. We have noted the "well-recognized principle that a majority constitutes a quorum, and if a quorum is present, the legislative, judicial, or administrative body has authority to act on those matters coming within its jurisdiction. However, we qualified this principle by saying that it was applicable only *in the absence of persuasive circumstances or a statutory directive to the contrary." Jacob*, 117 R.I. at 167, 365 A.2d at 432.

In the instant case we are not compelled by statutory mandate to hold that all members of the Public Utilities Commission must participate in making an order or decision. Therefore, the final order and report, docket No. 1440, rendered by two members of the commission is valid and has all the force of law.

## II

The landowners argue that the statutory prerequisites for condemnation required by § 39-1-31 were not satisfied. The statute provides:

"39-1-31. Eminent domain. —Before exercising any power of condemnation a company shall present a petition to the commission describing the land, right of way, easement or other interest in property it proposes to acquire and setting forth why it is necessary to acquire it by eminent domain. The commission shall set a time and place for hearing such petition and shall give such notice as the commission deems the circumstances require. If the commission shall determine that the proposed taking is for the benefit of the people of the state, and that it is necessary in order that the petitioner may render adequate service to the public, and that the use to which the property taken will be put will not unduly interfere with the orderly development of the region and scenic development, it shall issue a certificate authorizing the company to proceed with condemnation."

The commission analyzed the record in light of the foregoing statute and correctly established that Narragansett, the petition sponsor, bore the burden of proof to establish that each legal requirement of § 39-1-31 be met. *Narragansett Electric Co. v. Harsch,* 117 R.I. 395, 368 A.2d 1194 (1977).

The commission found that Narragansett met its burden of showing that the proposed transmission line, as set forth in the petition, complied with the requisite elements established in § 39-1-31. The commission relied on testimony and exhibits received during proceedings lasting approximately five years, and concluded that the proposed transmission line is for the benefit of the people of the state and is necessary to assure the public adequate service. The commission found, moreover, that the proposed construction will not unduly interfere with the environment. We are of the opinion that the commission's findings are fairly and substantially supported by the record. In light of our determination, the contentions by the landowners are without merit.

### A

The landowners argue that the commission failed to observe the standard to be applied in determining whether the proposed transmission line is for the benefit of the people of the state. The commission equated the term "for the benefit of the people of the state" with a requirement that a utility's condemnation proposal must constitute a "public use." We do not believe that the method used by the commission to determine whether the proposed transmission line will benefit the people of the state was unreasonable. The commission stated that state utility law has defined the phrase "public use" to mean a function whereby the utility provides necessary services to utility customers rather than simply promoting the immediate private business interests of such utility. *In re Rhode Island Suburban Railway Co.,* 22 R.I. 457, 461, 48 A. 591, 593 (1901).

Narragansett presented evidence regarding future power reliability, asserted growth needs, and the viability of a 345-kilovolt supply line in light of the present supply system. The commission noted that no evidence was presented to rebut Narragansett's contention that the proposed transmission line will be necessary in the future. The commission determined that the proposed transmission line will provide necessary services to utility customers and benefit the people of the state.

The landowners contend that the commission, in reaching its conclusion, disregarded relevant considerations including cost benefits, environmental damage, and the effects on the individual property owners. We disagree. In our review of the exhaustive final report and order, we find it abundantly clear that the commission scrutinized the various considerations claimed by the landowners to have been overlooked. The commission's findings are supported by substantial evidence that provides a specific and reasonable basis for the commission's result. *Narragansett Electric Co. v. Burke,* 475 A.2d 1379 (R.I. 1984). Hence the commission's findings that the proposed transmission line is for the benefit of the people of the state will not be disturbed.

### B

The landowners argue that the commission erred in determining that Narragansett established that its proposed condemnation is necessary in order to allow it to render adequate service to the public. The commission required Narragansett to prove that (1) a clear necessity for the proposed condemnation exists, (2) there is a need for condemnation of property to the extent being sought, and (3) Narragansett's asserted need will materialize in the reasonably foreseeable future. The commission addressed each standard separately and concluded that Narragansett presented adequate testimony and exhibits and demonstrated the necessity of the proposed condemnation.

Narragansett presented evidence that explained that the physical limits on the present supply system threaten the reliability and growth potential of the bulk of

Narragansett's service area. The commission found that Robert Snow, the company's primary transmission-planning witness, was "able to conclusively establish that Narragansett Electric's current supply system would lose its ability to reliably provide firm power, as defined by the utility industry, when the Company's overall service peak load reached 900 MW level." The commission noted that no opposition was raised in response to Narragansett's limited-supply-system argument.

The landowners dispute that a clear need exists for the proposed condemnation. They argue that the transmission line will be a "backup line" rather than a "primary transmission supply line." The commission rejected this argument and specifically characterized the transmission line as a supply system with capacity to provide firm power. The commission accepted the definition of the "term 'firm power' to mean the amount of power that the Company could supply its customers if it lost use of its largest power supply facility." The commissioners were satisfied that because the "development of additional transmission capability will contribute to the reliability of electricity supply," the condemnation of property is necessary. We find that the order is lawful and reasonable and that the findings are substantially supported by legal evidence.

### C

■ To determine the need for condemnation to the extent sought by Narragansett, the commission appropriately stated that an electric utility's proposed transmission-line condemnation route should not be set aside by a reviewing authority absent a finding of an abuse of discretion or arbitrariness, capriciousness, or bad faith on the part of such utility. *Ellis v. Public Service Co. of Indiana, Inc.*, 168 Ind.App. 269, 342 N.E.2d 921 (1976). The landowners object to a five-mile portion of the proposed route that parallels an existing 345–kilovolt transmission line operated by Blackstone Valley Electric Company. The commission found that Narragansett "made adequate efforts to inquire into the possibility of using BVE's right-of-way

and, notwithstanding such fact, that use of such right-of-way by the Company would present technical problems and additional costs which outweigh any benefits which might accrue in the dual-use of the said BVE right-of-way." In addition the commission points out that no witnesses were presented to explore further the dual-use possibility and no alternative routes were proposed to establish a finding that Narragansett's proposal was arbitrary or capricious.

The record indicates that the only alternative transmission-line routes were filed by Narragansett in its effort to minimize damage to the environment and to accommodate the Rhode Island Audubon Society. Narragansett accepted recommendations and consequently in 1980 it filed a motion to amend its original petition. The commission denied the landowners' motion to strike the amended petition. The commission required that all of the affected landowners be given adequate notice of hearings with regard to the proposed alternative routes. We have reviewed the record and found competent evidence to demonstrate that Narragansett's method for formulating the presently proposed route was not arbitrary, capricious, or effected in bad faith. Therefore, the commission's findings are fairly and substantially supported by the record, and the order will not be disturbed.

### D

■ The landowners argue that the commission failed to consider adequately whether the use to which the property taken will be put will not unduly interfere with both the orderly development and the scenic development of the region. The commission acknowledges the undisputed reality that the proposed transmission line will indeed interfere with the use and development of property owned by several petitioning landowners. However, the commission emphasized that Narragansett was cognizant of the potential impact, and in response it formulated a "prudent method of line siting and various impact mitigation efforts." The commission found that Nar-

ragansett's efforts resulted in a proposal that does not unduly interfere with the orderly and scenic development of the region. The commission correctly assessed the project as a whole and stated "to the extent that landowners will be inconvenienced by construction of the Company's proposed line, we believe such inconvenience to be outweighed by the public's need for the transmission line supply system as presented by the Company."

The commission, in reaching the aforesaid conclusion, opined that its findings complied with the requirements set forth in Article XXXVII of the Rhode Island Constitution.[3] We agree. It is our considered judgment that the evidence contained in the record provides a fair and substantial basis upon which the commission made its findings. Thus, we find no error in the determination by the commission that Narragansett complied with the requisite elements set forth in § 39–1–31.

### III

■ The landowners contend that the commission erred in holding that Narragansett may commence condemnation in 1988. The landowners argue that the public need will not occur within the reasonably foreseeable future. We find the landowners' argument to be without merit.

In 1980 the commission denied the landowners' motion to dismiss Narragansett's petition to amend. In 1983 it denied a motion to defer the condemnation sought by Narragansett. The motions were filed in response to Narragansett's revised projected transmission-line need date from 1988 to 1993 and ultimately to 1996. The landowners argued that technological advances might occur in the future that could eliminate the need for the line. On both occasions the commission refused to re-

quire that Narragansett prove an immediate need or that the project is a product of emergency-capacity need. "Both federal and state authorities recognize that the power of eminent domain is not confined to the taking of property for which there is an absolute and immediate need. It extends also to the taking of property which is reasonably necessary, and for which a need will probably exist within a reasonable time." *Chapman v. Public Utility District No. 1*, 367 F.2d 163, 168 (9th Cir. 1966). The commission concluded that the testimony and evidence presented by Narragansett demonstrated that the need for the transmission line will likely exist in 1996. We yield to the judgment of the commission to decide what constitutes the reasonably foreseeable future for issuance of a certificate permitting condemnation. Thus, we will not disturb the commission's ruling.

### IV

■ The landowners contend that the conditions attached to the final order and report are illegal. See statement of facts, *supra*. However, the commission correctly noted that administrative commissions have the right to attach conditions to orders so long as the conditions are reasonable and based on evidence. *Yellow Cab Co. v. Public Utility Hearing Board*, 73 R.I. 217, 54 A.2d 28 (1947).

The landowners argue that their rights to notice and a hearing are violated as a consequence of the condition that requires Narragansett to file an affidavit prior to receiving final permission to proceed with the plan. We disagree and find that the conditions attached to the order are in the interests of the public. The landowners had sufficient notice and opportunity to be heard during twenty-two hearings over a

---

**3.** Article XXXVII of the Rhode Island Constitution is now section 17 of article I, of the 1986 Constitution. It provides in pertinent part:

"The people * * * shall be secure in their rights to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values; and it shall be the duty of the general assembly to provide for the conservation of the air, land, water,

plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural environment of the people of the state by providing adequate resource planning for the control and regulation of the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state."

four-year period. In response to the particular objections and concerns raised, the commission imposed conditions on the order that required Narragansett to be vigilant to historical, environmental, and personal considerations in order to mitigate the impact of a project of this magnitude.

In addition the commission's provisional order requires that Narragansett file a detailed transmission-line construction and maintenance plan regarding programs and policies for cutting trees, clearing wetlands, preserving rare plants and animals, and mitigating the visibility of line towers. In our view the commission's actions not only serve as a gesture of sincere concern for the public welfare and the environment, but also, provide assurance to the affected parties that the proposed transmission-line plan will not deviate from the petition as granted.

Accordingly, the landowners' petition for certiorari is denied and dismissed. The writ heretofore issued is quashed. The final order and report of the commission is affirmed, and the papers in the case are remanded to the commission with our decision endorsed thereon.