DECISION
This matter is before the Court on the verified complaint of the Warwick School Committee (hereinafter Committee) against the Warwick Teachers Union (hereinafter Union). The complaint seeks declaratory and injunctive relief, specifically the following relief:
 1. An immediate and permanent stay of Arbitration Number 11-390-01804-95 of the American Arbitration Association;
 2. A declaration that the collective-bargaining agreement between the parties, covering the period September 1, 1994, through August 31, 1997 (hereinafter referred to as CBA), excludes arbitration of the nonrenewal of a non-tenured teacher;
 3. A declaration that the appeals process, set forth in Rhode Island General Laws, as amended, § 16-13-4, is the exclusive remedy available under the facts here presented to the non-renewed, non-tenured teacher member of the collective bargaining unit.
FACTS AND PROCEDURAL HISTORY
Initially, this matter was heard by the Court in October, 1995. After the hearing and review of memoranda, the Court rendered a lengthy bench decision on October 30, 1995. In reaching its decision, which is incorporated herein, the Court examined recently enacted legislation, P.L. 1995, ch. 387, § 1, submitted as Senate Bill 946, Substitute A (hereinafter referred to as Bill 946, Sub A). After an order carrying forth the Court's decision entered, counsel realized that they mistakenly provided the Court with an intermediate, not final version of said legislation. Consequently, the Court granted a joint motion to vacate the order, invited the parties to submit supplemental memoranda and heard further oral argument. The decision ultimately rendered herein is based on P.L. 1995, ch. 387 as finally enacted.
 The facts giving rise to this matter are, as follows:
 1. The Teacher in question, (hereinafter Teacher) would have completed the three-year track to tenure at the conclusion of the 1994/95 school year;
 2. On February 27, 1995, the then superintendent of schools of Warwick recommended to the Committee that the Teacher not be renewed for an additional year;
 3. Teacher was given an opportunity to be heard by the Committee, after which committee accepted the superintendent's recommendation, and declined to renew Teacher's contract;
 4. Teacher requested, and under date of April 5, 1995, received a statement of cause for nonrenewal;
 5. The statement of cause, in the form of a certified letter, set forth, inter alia, that, "The superintendent, in support of his recommendation . . . expressed the opinion that certain aspects of your performance . . . persuaded him that he could hire someone better qualified for the position." The letter went on to indicate that that conclusion was based primarily, but not exclusively, on reports of complaints by parents of seven out of the 16 pupils in teacher's first-grade class. The letter then detailed nine types of complaints. The letter indicated that Teacher's appeal, pursuant to § 16-13-4, would be heard at a time and place to be announced;
 6. Hearings, with respect to Teacher's appeal, were conducted by the Committee on seven separate dates from April 24, 1995, through June 29, 1995;
 7. On June 29, 1995, the Committee unanimously upheld its earlier decision not to renew;
 8. On August 31, 1995, the Union, on behalf of Teacher, filed a demand for arbitration with the American Arbitration Association, this demand coming only days after the August 28th rejection by the Committee of a grievance on behalf of Teacher;
 9. As a part of the arbitration process, the American Arbitration Association (hereinafter AAA) administrative office furnished to each party — the Committee and the Union — a list of potential arbitrators. It appears that there was no agreement with respect to the first list so submitted, and that the AAA sent to each party a second list;
 10. Thereafter, the instant proceeding was commenced.
Before turning to this Court's legal analysis of this matter, it is important to note certain provisions of the CBA, reference being made to article eight, entitled "Personnel Policies," with specific reference to sections 8.4.2, which, inter alia, provides, "In cases where a teacher's contract is not going to be renewed for the coming year, the teacher shall be notified, on or before March 1." And again, "In cases where a teacher's contract is not going to be renewed for the coming year, the teacher shall be notified in accordance with the date established by state law."
Specific reference also is made to Section 8-4.3, which, after providing that a tenured teacher, upon notice of suspension or dismissal, may file a grievance at the second step of the contractually-provided grievance procedure, in a subsequent paragraph states, as follows: "In case of nontenure[d] teachers, the evaluation procedure, as adopted in this agreement, shall take precedence in cases involving dismissal for reasons of teacher incompetency and effectiveness, and in such cases the above paragraph shall not apply."
Finally, Section 8-4.4 provides that, "Nothing provided herein shall in any way abrogate or limit rights granted to the committee or teachers under State of Rhode Island laws."
The Committee, based upon the foregoing, and upon the statutory case law, which it deemed pertinent, argued that the sole remedy available, under all of the facts here, is resort by the Teacher, by right of appeal, to the State Department of Elementary and Secondary Education. Section 16-13-4.
The Union, on the other hand, urged upon the Court a contrary result. It argued that the statements of cause with respect to Teacher were predicated upon information obtained and maintained in violation of certain rights enumerated in the CBA, from which the Union, on behalf of the Teacher, has the right to implement the grievance procedure, up to and including arbitration. The Court would note that, during oral argument, it became apparent that that procedure was implemented as a separate and distinct grievance, Grievance Number 181, with respect to the manner in which such information was maintained.
The Union also argued that recent legislation added a provision to Title 16, Chapter 13, Section 4, so as to provide that nothing contained in that section should be construed so as to prohibit a school committee from agreeing, in a collective bargaining agreement, to the arbitration of disputes arising out of nonrenewal, dismissal and/or suspension, under Subsections 2, 3 or 5 of Chapter 13.
Upon review of the facts and the law, this Court is convinced that the Committee is entitled to the relief which it sought. This Court believes that, but for the aforementioned recent legislation, our Supreme Court's holdings in Jacob v. Burke,110 R.I. 661, 296 A.2d 456 (1972), Jacob v. Board of Regents,117 R.I. 164, 365 A.2d 430 (1976), Pawtucket School Committee v.Pawtucket Teachers Alliance, 652 A.2d 970 (R.I. 1995), and SchoolCommittee of the Town of Johnston v. Johnston Federation ofTeachers, 652 A.2d 976 (R.I. 1995), would be completely dispositive of this matter. Under those cases, even if this Court were to find that the Committee had agreed, in the CBA, to permit arbitration of the nonrenewal of a non-tenured teacher, such agreement, this Court believes, would have been of no force or effect, because, as said in Pawtucket School Committee, 652 A.2d at 972, ". . . while the school committee can negotiate many items with the . . . employees of the system, it cannot bargain away statutory powers and responsibility."
The Johnston and the Jacob cases teach us that, at the time they were decided, the sole road to be followed was by appeal to the commissioner, pursuant to § 16-13-4.
What, then, is the impact of events subsequent to Johnston
which was decided on January 25, 1995? Thereafter, the recent legislation referred to above amending § 16-13, reference being made to Bill 946, Sub A, became law in August of 1995 after a gubernatorial veto of it was overridden. Bill 946, Sub A provided that it was effective upon passage. The version of that legislation relied on by the parties and mistakenly submitted to this Court did not expressly, or as this Court read it, impliedly provide for any retrospective application. Accordingly, this Court believed and held that, even if the CBA contained an expressed provision mandating arbitration as the final step in the non-rehiring process for non-tenured teachers, such provisions would be unenforceable, unless subsequent to the effective date of that recent legislation, August 4, 1995, the contract had been in some way reratified, confirmed and approved by the parties. There was no suggestion of any such action by either party hereto.
The Union suggested that, in this case, the issue really is not one of nonrenewal, but rather is one related to suspension or dismissal; and, this defendant argued, is governed by the grievance procedures starting, in the case of non-tenured teachers, at step one rather than step two, as set forth in the contract language referred to above. This Court rejects that notion because to adopt it would, in the opinion of this Court, all but completely nullify any distinction between tenured and non-tenured teachers, and further would make meaningless the statutory procedure with respect to and relative to appeal of nonrenewal of non-tenured teachers to the department and to the commissioner, as referred to above.
As stated above, after an appropriate order entered, counsel realized that they mistakenly submitted an intermediate draft of Bill 946 — Sub A, not the final version of the statute as ultimately passed by the Legislature, P.L. 1995, ch. 387, § 1 (hereinafter referred to as ch. 387). Consequently, the Court's decision was erroneous. Counsel jointly informed the Court that an intermediate, not final version, of Bill 946 — Sub A had been mistakenly submitted by the parties and together, with the Court's permission, moved to vacate the Court's November 10, 1995 order. At that time, the Court granted the motion, invited the parties to submit supplemental memoranda, and subsequently heard oral argument, including specifically the effect, if any, of the language of ch. 387. During this course, the Committee notified the Attorney General, by letter dated February 16, 1996, that it challenged the constitutionality of ch. 387 to the extent that "it purports to make retroactive amendments to the Rhode Island Teachers' Tenure Act, Chapter 13 of Title 16 of the General Laws" (hereinafter constitutional challenge). By letter dated March 15, 1996, the Attorney General advised the parties and the Court that the Department of Attorney General would not then be intervening but reserved the right to intervene at any later time, including on any appeal of this matter.
REMEDY AVAILABLE UPON NONRENEWAL OF A NON-TENURED TEACHER
The language of ch. 387 amending Section 4 of Chapter 13 of Title 16 essentially provides, in relevant part, that:
 "Nothing contained in this section shall be construed to prohibit or at any time to have prohibited a school committee from agreeing, in a collective bargaining agreement, to the arbitration of disputes arising out of the non-renewal, dismissal and/or suspension of a teacher . . . ."
This new statutory language appears retroactively to validate an agreement, in a pre-existing collective bargaining agreement between a school committee and a union, to arbitrate such disputes. "Because the [Rhode Island Legislature has the right `to alter or amend any [statute] previously adopted,' the Legislature's amendment of [Title 16, Chapter 13 will be controlling unless forbidden by the State or Federal Constitution. Since a legislature's acts, which are done within the scope of its powers, are assumed to be valid, amendments to existing statutes should be given full force and effect by the courts. Craig v. Pare, 497 A.2d 316, 319 (1985). (Citations omitted). See Forte Bros. v. State of Rhode Island Department ofTransportation, 541 A.2d 1194, 1195-96 (R.I. 1988). However, before reaching the constitutional challenge raised by the Committee or the defense of constitutionality by the Union, in this Court's opinion, for said statutory language to be operative, a school committee and a union must have clearly agreed, in a collective bargaining agreement, to arbitrate such disputes. The threshold issue then before this Court is whether or not the parties hereto have clearly agreed, in their collective bargaining agreement, to arbitrate such disputes.
Relying on its earlier arguments, the Committee restates its position that the CBA excludes arbitration of the nonrenewal of a non-tenured teacher. It is undisputed that the first paragraph of Section 8-4.3 of the subject collective bargaining agreement specifically addresses the application of the grievance procedures, which may lead to binding arbitration, to the suspension or dismissal of tenured teachers. The Committee contends that the second paragraph of Section 8-4.3 excludes the nonrenewal of a non-tenured teacher from the arbitration process. Said paragraph provides that,
 "In the case of non-tenure[d] teachers, the evaluation procedure as adopted in this agreement shall take precedence in cases involving dismissal for reasons of teacher incompetency and effectiveness, and in such cases, the above paragraph shall not apply."
The evaluation procedure, found in Section 8-1 of the collective bargaining agreement, has no provision which allows a non-renewed, non-tenured teacher access to the arbitration process nor does the remaining language of the second paragraph of Section 8-4.3. The second paragraph of said section expressly addresses the dismissal of a non-tenure[d] teacher for reasons of teacher incompetency and effectiveness.
Additionally, the subsequent section of the collective bargaining agreement, Section 8-4.4, expressly provides that, "Nothing provided herein shall in any way abrogate or limit rights granted to the school committee or teachers under State of Rhode Island laws." Said clear and unequivocal language indicates to this Court that the parties did not intend to alter the non-renewed non-tenured teacher's right pursuant to § 16-13-4
to appeal nonrenewal to the State Department of Elementary and Secondary Education.[1]
Consequently, in this Court's opinion, there is no expression in the CBA by the parties hereto of any clear intention to provide access to arbitration for a non-tenured teacher upon the natural expiration or nonrenewal of a teaching contract.
By referencing several general provisions of the CBA, the Union urges a contrary result. In light of the foregoing analysis, said general provisions do not, in this Court's opinion, satisfy the threshold issue. Additionally, the Union again suggests that the second paragraph of Section 8-4.3 merely eliminates the right of a non-tenured teacher to initially file a grievance at the second step. Even if the Court was so persuaded, neither contention convinces the Court that the parties clearly intended in the subject CBA to arbitrate the nonrenewal of a non-tenured teacher. Consequently, on these facts, the exclusive remedy available to Teacher is the appeal process set forth in16-13-4(a).[2]
Accordingly, the Committee is entitled to the relief which it seeks. Petitioner shall prepare a proposed order that will be settled after notice.
[1] Section 4(a) of Title 16, Chapter 13 of our General Laws, in pertinent part, provides:
"Any teacher aggrieved by the decision of the school board shall have right of appeal to the state department of elementary and secondary education and shall have the right of further appeal to the superior court."
[2] The Union directs the Court's attention to the portion ofPontarelli, a March 27, 1996 order of our Supreme Court, providing,
"We conclude that the appeals procedure set forth in 16-13-4 is not an exclusive remedy which preempts the grievance and arbitration process pursuant to the collective-bargaining agreement.
The issue raised by the grievance involved the terms and conditions of Ornazian's employment and, as such, was an issue that was arbitrable pursuant to the terms of the collective-bargaining agreement." (Emphasis added). Pontarelli v. Central Falls Teachers Union, 673 A.2d 73, 74 (R.I. 1996).
Even if the appeals process set forth in § 16-13-4 is not an exclusive remedy, unlike the subject CBA, the collective bargaining agreement in Pontarelli apparently provided for arbitration of the specific issue in dispute between the parties.